## In re RUGHEIMER.

*(District Court, E. D. South Carolina. October 15, 1888.)*

1. EMINENT DOMAIN — EXERCISE BY UNITED STATES — ACT CONG. AUG. 1, 1888 — CONSTITUTIONAL LAW.

Act Cong. Aug. 1, 1888, authorizing designated government officers to acquire for the United States, by condemnation, real estate for the erection of public buildings, and conferring upon the United States circuit and district courts jurisdiction of the condemnation proceedings, is not void as in conflict with Const. U. S. amend. 5, declaring that private property shall not be taken for public use without just compensation. by its omission to provide for compensation to the owner, as the act must be read with the constitution, and the courts will not award process of condemnation unless compensation be provided for.

2. SAME—APPROPRIATION—CONDITIONS.

Act Cong. Feb. 9, 1887, making an appropriation for the erection of a public building at Charleston, S. C., provides that no part of the appropriation shall be expended until title to the site for the building shall be vested in the United States, nor until South Carolina shall cede to the United States jurisdiction over the site. South Carolina ceded jurisdiction, but provided in the act of cession, that the jurisdiction shall not vest until the United States shall have acquired title to the lands by grant or deed, and have had the evidence of title properly recorded. *Held,* that the conditions prescribed by the latter act need not be fulfilled before the appropriation could be used to pay for the land. but that the former act contemplated that delivery of the deed and payment of the consideration should be contemporaneous acts.

3. SAME—CESSION BY STATE—CONSTRUCTION.

The words "grant or deed," used in the South Carolina act, do not exclude the idea of title by condemnation, as the title acquired by condemnation proceedings is by deed executed by order of the court. and, whether executed by the owner or by a court officer, it is in law the deed of the owner.

4. SAME—PROCEDURE.

There being no fixed forms of pleading in South Carolina in condemnation proceedings, but the procedure being by petition by persons duly authorized, notice to the owner, a hearing by a court of record as to the necessity of taking the land, followed by an assessment of compensation finally made by a jury impaneled for that purpose, the institution of such proceedings by peti-

tion of a duly authorized agent of the United States, service of the petition on the land-owner, and disposition of the matter by the United States district court, is in accordance with the provision of the act of 1888, requiring the practice, pleadings, forms, and modes of procedure in condemnation proceedings to conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like cases in the courts of record of the state.

5. SAME—PARTIES.
The petition for condemnation, under the act of 1888, need not be in the name of the United States, but may be in the name of its designated agent, as, under the act, in order to put the machinery of the United States circuit or district courts in motion, it must appear that application is made by an authorized officer, and that in his opinion the condemnation of the property is necessary; but the final questions for the jury should be submitted in the name of the United States.

At Law. Petition for condemnation of real estate for purposes of the United States.

*L. F. Youmans*, Dist. Atty., and *H. A. De Saussure*, Asst. Dist. Atty., for the United States.

*Buist & Buist*, for respondent.

SIMONTON, J. This is a petition of the Hon. C. S. Fairchild, secretary of the treasury of the United States, setting forth the act of congress approved February 9, 1887, directing him to purchase or otherwise provide a site for a public building for the use and accommodation of the post-office and the circuit and district courts of the United States, and for other government uses, at the city of Charleston, S. C., and the appropriation of a certain sum of money therefor; that he has selected for said site a lot of land in said city, of which John Rugheimer is said to be the owner, describing it by metes and bounds; and further stating that, in the judgment of the said secretary, it is necessary and advantageous to the government of the United States to acquire the fee-simple absolute in said lot of land, by condemnation, under judicial process. The prayer is that the court will take such order in the premises as should result in the acquisition for the United States of the fee-simple absolute in said lot of land, by condemnation, in accordance with the act of congress in such case made and provided. Upon the filing of this petition an order was entered that a copy of the petition be served on John Rugheimer, in the manner provided for the service of a summons, and that he show cause by the first Monday in October next thereafter, before this court, why the prayer of the petition be not granted, and such proceeding be had thereunder as may be in accordance with law. The respondent, John Rugheimer, having been duly served with this order, has made his return thereto, and sets up these objections: (1) That the proceedings are not brought in the name of the United States. (2) That they do not conform to the practice, pleadings, form, and mode of proceedings existing in like causes in the courts of this state. On the contrary, that they are without precedent. (3) That the act of congress, under which these proceedings are brought, is in violation of the fifth amendment to the constitution of the United States. (4) That the act of 1887 does not authorize the payment of money for land condemned. (5) That these

proceedings are unnecessary, as John Rugheimer is willing to sell to the United States, at a price deemed by him reasonable, and warranted by the prices already paid by the United States for lands adjoining this lot.

Looking to the essence, this return is in the nature of a demurrer to the petition. The objection to the constitutionality of the act of congress, under which the petition is proceeding, if sustained, must be fatal. It will therefore be first examined. This act is in these words:

"An act to authorize the condemnation of lands for sites of public buildings, and for other purposes. Be it enacted by the senate and house of representatives of the United States of America, in congress assembled, that in every case in which the secretary of the treasury, or any other officer of the government, has been, or shall hereafter be, authorized to procure real estate for the erection of a public building, or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so; and the United States circuit or district court of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the attorney general of the United States upon every application of the secretary of the treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from receipt of the application at the department of justice. Sec. 2. The practice, pleadings, forms, and modes of proceedings in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such circuit courts are held, any rule of the court to the contrary notwithstanding. Approved August 1, 1888."

The objection is that nothing is said in this act about compensation to the owner of the land sought to be condemned, and that in this the act is in conflict with the fifth amendment, which declares, "nor shall private property be taken for public use without just compensation." If the right to condemn private property for a public purpose rested on this act of congress, there would be great force in this objection. But the right of eminent domain does not rest on a statute or on a constitutional enactment. *Boom Co.* v. *Patterson*, 98 U. S. 406. It is an attribute of sovereignty, possessed by the general government as sovereign to enable it to perform its proper functions. It is an authority essential to its independent existence and perpetuity. *Kohl* v. *U. S.*, 91 U. S. 367; *U. S.* v. *Jones*, 109 U. S. 513, 3 Sup. Ct. Rep. 346; Cooley, Const. Lim. 526. The fifth amendment recognizes this attribute of sovereignty in the United States, possessed by it, notwithstanding the absence of any express grant in the constitution of 1789, by declaring that it shall not be exercised "without just compensation." This right of eminent domain, being thus possessed by the United States, the mode of exercising it, in the absence of any express provision in the constitution to the contrary, is within the discretion of the legislature. *Secombe* v. *Railroad Co.*, 23 Wall. 108. Without doubt congress, representing as it does, in the house of representatives the sovereignty of the people, and in the senate the sovereignty of the states, can, whenever it deems necessary, order private property to be appropriated for a public use. Such order would be subject to the

constitutional limitation, and would require that compensation should be made for such appropriation. In the act of 1888 congress has empowered certain public officials, who may thereto be specially authorized, to put in operation the right of eminent domain. It requires this right to be exercised by judicial proceedings in the district or circuit courts of the United States. These courts, in directing and conducting these proceedings, mindful of their constitutional obligations, must see to it that the process of condemnation be not awarded unless full compensation be provided. The act of 1888 must be read *in pari materia* with the constitution. The term "condemnation," used in that act, must be construed to mean condemnation with just compensation. The machinery of the courts is employed to ascertain and secure such compensation. In my opinion the act is not in conflict with the constitution.

2. The next material objection is that the act of 1887, under which the appropriation is made for the payment for the site, does not authorize payment for land condemned. The act in question contains this provision:

"Provided, that no part of the said sum shall be expended until a valid title to the said site shall be vested in the United States, nor until the state of South Carolina shall cede to the United States exclusive jurisdiction over the same during the time the United States shall be or remain the owner thereof, for all purposes except the administration of the criminal laws of said state, and the service of civil process therein."

There can be no doubt that the exercise of the right of eminent domain vests a valid title. Under an act of the legislature of South Carolina (Gen. St. § 9) the jurisdiction of the state, except for the administration of the criminal law, and the service of civil process, "is ceded to the United States over so much land as is necessary for the public purposes of the United States, provided, that the jurisdiction shall not vest until the United States shall have acquired the title to the lands by grant or deed from the owner or owners thereof, and the evidence thereof shall be recorded in the office where by law the title to such land is recorded." It is argued that these conditions must be fulfilled before any use can be made of the appropriation. We cannot go to this extent. If the money cannot be used until an absolute deed is made and recorded, few persons would be found to convey property to the United States. The payment of the consideration and the delivery of the deed are contemporaneous acts. The stress, however, is laid on the words "have acquired the title to the lands, by grant or deed, from the owner or owners thereof." The argument is that this involves the idea of a voluntary act, and excludes a title by condemnation. The act should be liberally construed. It is an act of comity by the state to the United States. The purpose of the act is to cede the jurisdiction whenever the United States have acquired full title to the land. Title is acquired in land from the owner or owners by grant or deed, where the whole title has passed from the owner to the alienee, whether this be effected by deed signed by the parties or by an order of court, as in the case of a deed by the sheriff or master. If the United States were, in the present case, to ac-

quire title to this lot in judicial proceedings for its condemnation, the title so acquired would be under the order of the court by deed, and whether by said order the deed be made by the owner or by the executive officer of the court it would be in law the deed of the owner of the land. This is the law of South Carolina. In *Williman* v. *Holmes*, the court says:

"When, in the case supposed, the court orders the fee to be sold and conveyed by the commissioner, his deed carries that estate and all the interests of the parties to the suit precisely as if they had themselves executed the conveyance." 4 Rich. Eq. 491; *McKnight* v. *Gordon*, 13 Rich. Eq. 222. See, also, section 307, Code Civil Proc. S. C.

This is also the law of this court. In *Miller* v. *Sherry*, 2 Wall. 238, the court says:

"When chancery has full jurisdiction both as to persons and property, and decrees that a master of the court sell and convey real estate, the subject of a bill before it, a sale and conveyance in conformity to such decree is as effectual to convey a title as the deed of a sheriff, made pursuant to an execution at law. The defendant whose property is sold need not join in the deed."

3. It is further objected that the course adopted by the district attorney is not authorized by the act of 1888. The act of 1888 provides that the practice, pleadings, forms, and modes of proceedings in causes arising under that act shall conform, as near as may be, to the practice pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state. "In like causes;" that is to say, in analogous causes. "As near as may be;" that is to say, as near as may be practicable, not as near as may be possible, with discretion in the judge of construing and deciding how far to go. *Railroad Co.* v. *Horst*, 93 U. S. 301; *Phelps* v. *Oaks*, 117 U. S. 239, 6 Sup. Ct. Rep. 714. The constitution of South Carolina contains the same provision as that of the United States, forbidding the taking or applying private property for the public use without just compensation. It goes further, and, subject to the same limitation, permits private property to be taken for the use of corporations or for private use. Section 23, art. 1. No provision is made in the organic law for the mode of ascertaining the compensation when property is taken for public use; but when the right of way over private property is appropriated for the use of any corporation, "full compensation therefor shall first be made or secured by a deposit of money to the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of 12 men in a court of record, as shall be prescribed by law." Article 12, § 3. No provision is made by the legislature for any special form of proceeding for the condemnation of land for the use of the state, or the condemnation of the fee-simple in land for any purpose, except as stated hereafter. Highways are opened over lands by the county commissioners, in their discretion, under the superintendence of special commissioners appointed by them. Gen. St. S. C. §§ 611, 1063. Provision is made for a special mode of ascertaining the compensation to be paid to the owner, with the right of appeal to the circuit court and a jury. 18 St. at

Large, 532; 19 St. at Large, 283. In certain cases, in which the land of a person is surrounded by private lands and he needs a way to a public highway, he can condemn land enough for such way. Ten days' notice in writing is given to the owner of the land, by the party desiring the right of way, referees are appointed to value the land so needed, and to determine the compensation and damages, from whose decision lies an appeal to the circuit court of the county and a jury. Gen. St. §§ 1077–1079, 18 St. at Large, 398. So, also, railroad companies may acquire the right of way over lands of private persons and corporations. The practice proceeds upon petition by the corporation needing right of way, notice thereof to the owner, organization of a special jury by the clerk of court, inspection of premises by the jury, with a right of appeal to the circuit court and a jury. Gen. St. §§ 1551–1553. The fee in lands for depots, etc., is acquired in the same way, (Id. § 1554,) by similar proceedings and a verdict. When private property is needed for drainage purposes a petition is filed in the circuit court, setting forth the necessary facts, and is served on the land-owner 10 days before the hearing. The hearing is summary. If it appear that the grounds of the petition are well taken, commissioners to assess compensation are appointed. An appeal to and final valuation by a jury are provided for. Id. §§ 1563–1567. In case the United States needs land for forts or arsenals, and cannot agree with the owner as to the price, the land shall be valued on oath by a majority of persons appointed for this purpose by the court of common pleas of the county in which the land is situated. Id. § 5. Of course, there must be formal application to the court, and due notice thereof. So, when land is needed by the United States, for light-houses or light-house purposes, and application for the purpose of purchasing the same is made to the court of common pleas by any authorized agent of the United States, that court, after due notice to the owner, who is either unable or unwilling to sell the same, shall impanel a jury in the manner now provided by law for the purpose of assessing the value of the lands, etc. Id. § 7. We thus see that there is no fixed form of pleading in the state of South Carolina. But the procedure and practice are uniform, both as provided in the constitution and in the statutes; that is to say, a petition by persons duly authorized, notice to the land-owner, a hearing by a court of record as to the necessity of taking the land, followed by an assessment of compensation finally made by a jury impaneled for that purpose. We have, in the present case, all of these elements. The petition by a duly-authorized agent of the United States, vested, by the act of 1888, with discretion to determine the necessity for condemnation, the service of this petition on the land-owner to appear in a court of record. Under the act the courts of the United States, the district and circuit courts, not the judges, have jurisdiction. This cause is brought into this court as a law cause. *Kohl* v. *U. S.*, *supra*; *Searl* v. *School-Dist.*, 124 U. S. 197, 8 Sup. Ct. Rep. 460; *Boom Co.* v. *Patterson*, 98 U. S. 403. Juries are in attendance on the court, a necessary and essential part thereof, regularly impaneled for the purpose of trying cases at law. The proceeding adopted conforms, as near as may be, to the

practice, pleadings, forms, and proceedings in courts of record of this state.

4. The last objection which requires attention is that the proceedings are not brought in the name of the United States. It must be observed that this is not the proceeding for condemnation. The petition prays "that the court will take such order in the premises as shall result in the acquisition for the United States of the fee-simple absolute" in the lot of land. The respondent is asked to show cause "why the prayer of the petition should not be granted, and such proceeding be had thereunder. as may be in accordance with law." Under the act approved August, 1888, in order to put the machinery of the district or circuit court of the United States in motion, it must appear that application for the commencement of the proceedings is made by the secretary of the treasury, or some other officer of the United States; that such officer has been authorized to procure real estate for some public use; and that, in his opinion, it is necessary or advantageous to the government to acquire such real estate for the United States, by condemnation under judicial process. This being shown to the satisfaction of the court, it takes cognizance of the proceedings, and proceeds upon the matter of condemnation. In the present case all the facts necessary to secure action on the part of the court have been set out in the petition. In this, as we have seen, the practice of the state has been observed. In all the acts provision is made for the inception of the proceedings by some person thereto duly authorized. In the case of light-houses the language used is strikingly like this: "Whenever it shall have been made to appear to any circuit court upon the application of any authorized agent of the United States." Gen. St. S. C. § 7. The representation must be made upon the petition of such person to a court of record, and then follow notice of such petition to the land-owner, a summary hearing by the court, the submission of the question sooner or later, always to a jury. When that question is to be submitted it must be submitted in the name of the United States. The property of a citizen cannot be taken for a public use without just compensation. To protect him, to secure him in his right, the condemnation by the action of this court must be accompanied by provision for his compensation. As the judgment binds him in the taking of his land, so it must bind the United States to pay him for it. But this only becomes necessary and proper after the officer of the United States, asking for the exercise of the sovereign right of eminent domain, has satisfied the court that he is authorized to make his application. The fifth exception cannot now come up for consideration. The act of 1888 gives to the secretary of the treasury the right to determine whether the acquisition of land by condemnation, by judicial process, be necessary or advantageous. Whatever may be his motive, with that the court can have no concern. Nor can it control his discretion. Hearing the petition and the answer to the rule thereon, it appearing to the court that the Hon. Charles S. Fairchild, secretary of the treasury of the United States, has been put in possession of funds wherewith to acquire a site for a public building in the city of

Charleston for the public uses of the United States by purchase or otherwise, and it further appearing that, being thus authorized, the said secretary of the treasury is of the opinion that it is necessary or advantageous to the United States to acquire for the United States by condemnation, under judicial process, the lot of land in the city of Charleston described by metes and bounds in his petition, and that he has made application to the attorney general of the United States to cause proceedings to be commenced for the condemnation of the said lot of land,—it is ordered, adjudged, and decreed that the question be submitted to a jury, to be impaneled according to the laws and practice of this court attending at the present term thereof, what sum of money shall be assessed and awarded to the owner of said lot of land as just compensation to him by reason of the acquisition of the same by the United States of America? that the question shall be submitted in such form as that the United States of America and John Rugheimer shall be the parties thereto.