## In re MANDERSON et al.

*(Circuit Court of Appeals, Third Circuit. August 16, 1892.)*

1. EMINENT DOMAIN—CONDEMNATION BY UNITED STATES—COMPENSATION.

Act March 3, 1891, authorizes the secretary of war to modify existing plans for the excavation of Petty's island and the adjacent shoals in the Delaware river, but declares that the title to any additional lands "acquired" for this purpose shall be vested in the United States without charge. *Held* that, in view of this express declaration that no compensation shall be paid, the government has no constitutional power to institute condemnation proceedings to obtain such lands, and that there is nothing in the acts of April 24 and August 1, 1888, giving officers of the government general authority to proceed by condemnation, which qualifies or removes this condition against compensation. 48 Fed. Rep. 896, affirmed.

2. SAME.

A suggestion that the compensation would be paid by voluntary contributions is without merit, for that resource is too uncertain to justify condemnation.

3. SAME—CIRCUIT COURT OF APPEALS—JUDICIAL NOTICE.

The circuit court of appeals could not take judicial notice of independent proceedings in the trial court and other courts of the circuit, for the condemnation of other lands such proceedings not being a part of the record.

Error to the District Court of the United States for the District of New Jersey.

Petition for the condemnation of lands belonging to Andrew Manderson and others for the use of the United States. The petition was dismissed below for want of authority in the government to maintain the proceeding. 48 Fed. Rep. 896. The writ of error was sued out to review this judgment. Affirmed.

*J. Warren Coulston* and *Samuel Dickson,* *(Henry S. White,* U. S. Atty., and *C. V. D. Joline,* on the brief,) for plaintiff in error.

*Wm. C. Hannis,* for defendants in error.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

WALES, District Judge. Proceedings were instituted in the court below for the condemnation of certain lands lying within the state of New Jersey, and which are required by the United States for continuing the improvement of the harbor at Philadelphia. A petition was filed by the proper officer of the government, describing the lands necessary to be taken, naming their owners, and setting forth the substance of the several acts of congress which, it is alleged, authorize the said proceedings. The acts of congress referred to in the petition are:

(1) The act of March 3, 1891, entitled "An act making appropriation for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-two, and for other purposes," and containing the following appropriation:

"*Engineer Department.* For improving harbor at Philadelphia, Pennsylvania; continuing improvement; removal of Smith's island and Windmill island, Pennsylvania, and Petty's island, New Jersey, and adjacent shoals,—three hundred thousand dollars: provided, that the plan for the improvement may be modified by changing the line limiting the excavation on Petty's island to such position as the secretary of war may consider desirable, and the material to be removed from said islands and shoals under this appropriation, and appropriations heretofore made, shall be deposited and spread

on League island, and to the extent of the cost of such deposit and spreading the said appropriations are hereby made available: provided, further, that the title to any additional lands acquired for this purpose shall be vested in the United States without charge to the latter." 26 U. S. St. 977.

(2) The act of April 24, 1888, entitled "An act to facilitate the prosecution of works projected for the improvement of rivers and harbors," which reads as follows:

"That the secretary of war may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate, or prosecute works for the improvement of rivers and harbors for which provision has been made by law; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted: provided, however, that when the owner of such land, right of way, or material shall fix a price for the same, which in the opinion of the secretary of war shall be reasonable, he may purchase the same at such price without further delay: and provided, further, that the secretary of war is hereby authorized to accept donations of lands or materials required for the maintenance or prosecution of such works." 25 U. S. St. 94.

(3) The act of August 1, 1888, entitled "An act to authorize condemnation of land for sites of public building, and other purposes," which reads thus:

"That in every case in which the secretary of the treasury, or any other officer of the government, has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so; and the United States circuit or district courts of the district wherein such real estate is located shall have jurisdiction of proceedings for such condemnation; and it shall be the duty of the attorney general of the United States, upon every application of the secretary of the treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation within thirty days from the receipt of the application at the department of justice.

"Sec. 2. The practice, pleadings, forms, and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding." 25 U. S. St. 357.

Reference is also made in the petition to the act of congress of August 11, 1888, whereby the sum of $500,000 was appropriated for improving the harbor at Philadelphia by the removal of Smith's island and Windmill island, in the state of Pennsylvania, and Petty's island, in the state of New Jersey, or such parts of them, and the shoals adjacent thereto, as may be required:

"Provided, that no part of this sum shall be expended until the title to the lands forming said islands shall be acquired and vested in the United States without charge to the latter beyond three hundred thousand dollars of the sum herein appropriated." 25 U. S. St. 403.

The petition further states that the secretary of war had approved the modifications of the project for improving the harbor of Philadelphia, by changing the line limiting the excavation upon Petty's island, involving the removal of about 23 acres of land in addition to that portion of the island acquired under the provisions of the river and harbor act of August 11, 1888; that the secretary of war had also requested the attorney general of the United States to commence proceedings for the acquirement of said lands by condemnation, and the latter officer had directed such proceedings to be instituted.

The petition concludes with the prayer that, due notice having been given to the persons interested, the court will appoint three commissioners, as provided by the laws of the state of New Jersey in like causes, to appraise said lands required by the government, and the interest thereof of the several owners, and "to assess the damages to be paid by the United States of America therefor."

The petition as originally filed was amended by leave of the court, by inserting in its appropriate connection the following matter, to wit:

"That the owners of such land have fixed a price for the same which, in the opinion of the secretary of war, is unreasonable; that your petitioner cannot agree with the owners for the purchase thereof; and that, in the opinion of the secretary of war, it is necessary and advantageous for your petitioner to acquire the same by condemnation under judicial process."

On final hearing of the motion, made in behalf of some of the owners of the lands, to dismiss the petition for the reason that the acts of congress therein cited "exhibit no authority in the court for condemnation and adverse taking of the lands in said petition mentioned, and that, therefore, the said proceeding is without warrant of law," the petition was dismissed by the court below, and its decision is now brought here on a writ of error for review.

The sole inquiry presented by the record is, do the acts of congress, above recited, authorize proceedings to be taken in the court below for the condemnation of the lands described in the petition, and for their acquirement by the United States in that mode? It is unnecessary to discuss the general doctrine of the right of eminent domain and its application to the present case. Article 5 of amendments to the constitution of the United States prohibits the taking of private property for public use without just compensation. If the use for which it is proposed to take such property is not a public use, or if the owner of the property is not to be paid an equivalent, to be lawfully ascertained, for its loss, then no proceedings for condemnation can or should be allowed. The counsel for the government do not dispute this proposition, but insist that the condition, which is contained in the second proviso of the act of March 3, 1891, that the title to the lands to be acquired "shall be vested in the United States without charge to the latter," is immaterial. They admit that the owners of the property must be compensated for its loss, if it shall be taken by the government, but they say that the questions of compensation, its amount, and the time and manner of its payment, do not now arise, and will be

determined hereafter. Authority for the condemnation proceedings.is not claimed under this act, but by virtue of the acts of April 24, 1888, and of August 1, 1888. It is contended that the word "acquired," used in the proviso of the act of March 3, 1891, when read in connection with the two other acts, means that, if no purchase can be made by the secretary of war for a reasonable price, or if the title to the lands cannot be acquired gratuitously, then they may be acquired by condemnation. The proceedings for condemnation are for the purpose of fixing the price to be paid to the property owners, and title to the lands will not pass until that price has been paid. Such we understand to be the argument in support of the petition.

The act of April 24, 1888, authorizes the secretary of war to purchase land or materials needed for the improvement of rivers or harbors, for which provision has been made by law, at what he may consider to be a reasonable price, without further delay, or to accept donations of the same, and, when the land or material cannot be obtained in either of these modes, to institute proceedings for their acquirement by condemnation. The act of August 1, 1888, is a general law, and gives authority to any officer of the government who has been, or hereafter shall be, authorized to procure real estate for the erection of a public building, or for other public uses, to acquire the same by condemnation under judicial process, whenever in his opinion, it is necessary or advantageous for the government to do so. But these laws were enacted subject to the constitutional restriction that private property shall not be taken for public use without compensation. Congress intended that compensation should follow the condemnation proceedings in every case, and the omission to make an appropriation in advance to pay the damages assessed for taking the property constitutes no bar to such proceedings, for the faith of the government is always a guaranty for that payment. The act of March 3, 1891, however, excludes any inference or implication that the 23 additional acres on Petty's island are to be bought or paid for by the United States. This act, by its express terms, provides that the land needed for continuing the improvement of the harbor shall be acquired, if at all, on the condition that the title shall be vested in the United States without charge to the latter, and there is nothing to be found in the acts of 1888 which removes or qualifies that condition. Whether the three acts referred to are construed separately or together, no warrant can be found for instituting proceedings for the condemnation of this land. The act of March 3, 1891, was properly interpreted by the learned judge of the court below to mean that the land was to be acquired by a voluntary conveyance from the owners, or from their grantees, and in that event the United States would expend the sum of $300,000 in the excavations and removal of obstructions contemplated by the act.

Counsel for the government have requested us to take judicial notice of certain proceedings had in the court below, and in the United States circuit court for the eastern district of Pennsylvania, for the condemnation of other lands than those described in the petition, and which be-

longed to some of these same respondents; but, as those proceedings form no part of the record, they cannot be allowed to affect the present inquiry. It may be remarked, however, that the former proceedings were begun and prosecuted under the act of August 11, 1888, wherein the sum of $300,000 was appropriated for acquiring title to the lands mentioned in that act. In that case there was color of authority for the appointment of commissioners to assess damages, since, strictly speaking, it could not be known in advance that the assessment would not fall within the sum appropriated by congress; and the fact that the appropriation did fall short, and the deficiency was made up by voluntary contributions from other quarters, affords no justification for the proceedings in the present case. The petition now before the court prays that commissioners may be appointed to appraise the lands, and "to assess the damages to be paid by the United States of America therefor," in face of the fact that congress has declared in the plainest language that the United States shall not be liable for any charges in obtaining title to the property, and no other source is pointed out from which the owners could obtain redress.

The statement of counsel that the damages would be paid by voluntary contributions, as was done under the former proceedings for acquiring a part of these lands, is too uncertain to be relied on. Had the order prayed for been granted in the present case, the owners of the lands condemned would have had no claim against the government for the damages awarded, and there is no known legal procedure by which the other parties interested in the acquirement of the lands could have been compelled to contribute the sum required for obtaining the title. The only certain result of granting the order would have been to subject the present owners to the injury of holding a clouded title, in the event of the refusal by the petitioners, or by the respondents, to accept the finding of the commissioners. In any view which may be taken of the matters set out in this record, the dismissal of the petition by the court below was correct, and its judgment is, therefore, affirmed.