## In re MILITARY TRAINING CAMP IN PRINCE GEORGE COUNTY, VA.

### (District Court, E. D. Virginia. October 23, 1919.)

1. EMINENT DOMAIN ⊂⇒167(5)—POWER OF SECRETARY OF WAR TO INSTITUTE PROCEEDINGS.

   Repeal of statutes by implication is not favored, and the power given the Secretary of War by Act July 2, 1917 (Comp. St. 1918, § 6911a), to cause proceedings to be instituted in the name of the United States, for the condemnation of land needed for fortifications, coast defenses, and military training camps, was not abrogated by the provision in Army Appropriation Act July 11, 1919, declaring that no part of the appropriations shall be expended for the purchase of real estate for the construction of army camps and cantonments, except where, in cases of camps in use prior to November 11, 1918, it has been found more economical, for the purpose of salvaging such camps, to buy real estate than to continue to pay rentals; hence a petition by the Secretary of War, filed June 24, 1919, to condemn land for a military training camp, cannot be denied on the ground that the Secretary of War was without authority.

2. EMINENT DOMAIN ⊂⇒196—ON PROCEEDINGS BY SECRETARY OF WAR, PRESUMPTION THAT FUND EXISTS FOR PAYMENT.

   Where Secretary of War filed a petition to condemn land for a military training camp, and landowners attacked the petition on the ground the authority conferred on him by Act July 2, 1917 (Comp. St. 1918, § 6911a), had been repealed by Army Appropriation Act July 11, 1919, forbidding the expenditure of appropriations for acquisition of land, except in connection with salvaging property on established military camps, it will be presumed there was a fund in existence with which to pay for the land, as asserted by the Secretary.

3. EMINENT DOMAIN ⊂⇒66—ON PROCEEDINGS BY SECRETARY OF WAR, COURT DETERMINES QUESTION OF PUBLIC USE.

   On petition by the Secretary of War to condemn property for military purposes, the judicial question to be determined is whether the use is a public one, and questions as to payment rest in legislative discretion, although the courts must see that just compensation is made before the property is taken.

4. EMINENT DOMAIN ⊂⇒18—CONDEMNATION FOR MILITARY TRAINING CAMP A PUBLIC PURPOSE.

   Where the Secretary of War, as authorized by that act, began proceedings to condemn land, under Act July 2, 1917 (Comp. St. 1918, § 6911a), for a military training camp, it must be held that the condemnation is for a public purpose; the establishment of training camps being for the purpose of public defense.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EMINENT DOMAIN ☞169—IN CONDEMNATION BY SECRETARY OF WAR, NO DE-FENSE THAT FUND FOR PAYMENT NOT ON HAND.

Where the Secretary of War, as authorized by statute, began proceedings to condemn land for a military training camp, the proceeding cannot be dismissed because specific sum was not then on hand to compensate the landowners, for title would not pass until compensation is made.

6. COURTS ☞284—JURISDICTION OF FEDERAL COURTS.

Under Act Aug. 1, 1888 (Comp. St. §§ 6909, 6910), federal District Court has jurisdiction of proceeding by Secretary of War to condemn land, as authorized by Act July 2, 1917 (Comp. St. 1918, § 6911a), for military training camp.

At Law. In the matter of the condemnation of lands, with all improvements thereon, and the appurtenances thereunto belonging, lying in the County of Prince George, in the State of Virginia, needed by the United States for the site, location, construction, and prosecution of works for a military training camp. On pleas to the jurisdiction, and demurrer filed to the petition. Pleas and demurrer overruled, and motion to dismiss denied.

Hiram M. Smith, U. S. Atty., of Richmond, Va., for the United States.

Wilson M. Farr, of Fairfax C. H., Va., George H. Lamar, of Washington, D. C., Wyndham R. Meredith and Meredith & Meredith, all of Richmond, Va., and James A. Hefflin and A. L. Jones, both of Hopewell, Va., for sundry landowners.

WADDILL, District Judge. On the 24th of June, 1919, the original petition in these proceedings was filed by the United States of America, having for its purpose the condemnation of 32 tracts or parcels of land, with the improvements thereon, in the county of Prince George, Va., in the Eastern district of Virginia, at and adjacent to Camp Lee, and on the 30th day of June, 1919, an amended petition, having for its object the same purpose, was also filed by leave of court. Subsequently, on the 10th day of September, 1919, an order was entered giving notice by publication to the tenants of the freehold, as required by law, made returnable before this court, at its courtroom in the city of Richmond, Va., on the 6th day of October, 1919, the first day of the next ensuing term.

On the return day of this process, sundry defendants appeared, some specially, and some generally, and by appropriate proceedings, by way of demurrer, by special plea, and motions to dismiss, raised the question of the jurisdiction of the court, and sought to contest the validity of the proceedings. The case is now before the court for consideration of the legal questions thus presented.

The government's petition sets forth that the same was filed by direction of the Attorney General of the United States, acting in this behalf in accordance with the request of the Secretary of War of the United States, who had certified that it was necessary and advantageous to the interests of the United States to acquire the lands described in and set forth in said petition; that the said lands were needed for the site, location, construction, and prosecution of works

for a military training camp, and that the Secretary of War was acting pursuant to the provisions of the act of the 2d day of July, 1917 (Fed. Stat. Ann. Supp. 1918, p. 166; U. S. Comp. Stat. Temp. Supp. 1917, p. 363; 40 Stat. 241, c. 35 [Comp. St. 1918, § 6911a]).

The petition further sets forth that the United States, acting through their proper officers and agents and duly authorized representatives, had made an effort to agree with the landowners upon the price and terms of purchase, but without avail. It is further averred that, at the time of the filing of the petition and amended petition, a state of war existed between the United States of America, on the one hand, and the Imperial German government and the Imperial and Royal Austro-Hungarian government, on the other; that the interests of the landowners proposed to be taken by the United States were the fee-simple interests in and to said properties; and that an appropriation to pay for said lands was available, contained in the act entitled "An act making appropriations for the support of the army for the fiscal year ending June 30, 1919," approved July 9, 1918 (Act July 9, 1918, c. 143, 40 Stat. 845).

The grounds of defense interposed are briefly: First, that this court is without jurisdiction to entertain the proceeding, and that the same can only be maintained in the circuit court of Prince George county, Va., where the lands lie; second, that the proceedings should not be entertained, because it is manifest that the lands are not sought for public use, such as is authorized by the Constitution and laws of the United States, warranting the exercise of the right of eminent domain in respect thereto; and, third, because no appropriation exists whereby the lands condemned can be paid for. These two last positions will be considered in the order named, and in connection with the authority of the Secretary of War to inaugurate the proceedings.

[1, 2] By Act July 2, 1917, 40 Stat. 241, being an enlargement of Act Aug. 18, 1890, 26 Stat. 316, c. 797 (Comp. St. § 6911), the Secretary of War is authorized to cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, or the temporary use thereof, or any other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, and military training camps; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted. The act further provides for the purchase of property when terms can be agreed upon, acceptance of donations in that connection by the Secretary of War, and for the taking of immediate possession of the property by the government in advance of the ascertainment even of the validity of the title, by reason of the imminence of war, etc., and an existing immediate urgency arising therefrom.

The defendants insist that, notwithstanding this plain provision of the act of Congress authorizing the Secretary of War to acquire property by condemnation, he is now prohibited from so doing, and that these proceedings cannot be maintained at his instance, because of the

provision in Army Appropriation Act July 11, 1919, c. 8, 41 Stat. 128, making the appropriation for the support of the army for the fiscal year ending June 30, 1920, which reads as follows:

"That no part of any of the appropriations made herein nor any of the unexpended balances of appropriations heretofore made for the support and maintenance of the army or the military establishment shall be expended for the purchase of real estate for the construction of army camps or cantonments except in such cases at National Army or National Guard camps or cantonments which were in use prior to November 11, 1918, where it has been or may be found more economical to the government for the purpose of salvaging such camps or cantonments to buy real estate than to continue to pay rentals or claims for damages thereon, and except where industrial plants have been constructed or taken over by the government for war purposes and the purchase of land is necessary in order to protect the interest of the government"

—and urge that the effect of this provision is that there is no appropriation for the payment of the land sought to be taken, and that the Secretary of War is only authorized to make purchases of real estate for the construction of army camps or cantonments, in connection with existing camps, having in view the salving of the camp and the property thus acquired as a whole, and that no authority is given to proceed by condemnation to acquire such additional land as may be thus needed; in other words, that the property here sought to be condemned is not for such a public use as the Constitution contemplates, but only to enable the government the better and more economically to salve the tracts and camp sites that it may own adjacent thereto.

That there may be serious question regarding the right to condemn for the purposes indicated—that is, for salving purposes—goes without saying; but that is a matter that the court need not pass upon here, as this proceeding on its face is not for such purpose. The government's petition sets out that the condemnation is sought for one of the purposes for which the Secretary of War is expressly given authority to proceed by condemnation, namely, to acquire land to be used for a "military training camp." The contention made would, in effect, be to treat the appropriation act of July 11, 1919, in the particular cited, as a repeal by implication of the statute authorizing the Secretary of War to cause condemnation proceedings to be commenced for the purposes named in the act of July 2, 1917; that is to say, for "fortifications, coast defenses and military training camps."

Repeals of statutes by implication are not favored, and certainly the same should not be adopted unless entirely clear in respect to a statute as important as the one under consideration here. In this connection, sight should not be lost of the fact that military training camps are an incident to, or necessary for, the maintenance and organization of the army in time of peace as well as of war. It is true that the amendment to the appropriation act in question provides that no part of the appropriation of the money claimed by the Secretary of War to be available for the acquisition of the lands for the training camp in question shall be used for the purchase of real estate for the construction of army camps or cantonments, save to purchase in connection with cantonments or camps in use prior to November 11, 1918, for salvage pur-

poses; but since this is a proceeding in which the Secretary of War is engaged in the condemnation of property for purposes within his discretion, and not for salvage purposes, the court should be slow to hold that he had not the authority to use the appropriation committed to him for the purpose. On the contrary, certainly at this stage of the proceeding, the court would assume that he had, or would exercise the authority reposed in him, in expending the appropriation in question, properly, wisely, and discreetly. Moreover, the court should not substitute its judgment for that of the Secretary of War as to the existence or nonexistence of the fund with which to pay for the property condemned, especially when he vouches the fact that he was possessed of such funds. In re Rugheimer (D. C.) 36 Fed. 369. This is particularly true as it would not follow, if he should be mistaken as to his position regarding his right to use this particular fund, that he would not be warranted in paying for the property from other sources at his command, or secure the necessary appropriation to meet the requirements of the condemnation.

[3] The judicial question to be determined is whether the use for which it is proposed to take the property sought to be condemned, is a public one or not. When that is done, the judicial function is exhausted, and the extent to which property may be taken, or just how it will be paid for, rests in the legislative discretion; the court, however, to see that just compensation is made before the property is taken.

[4, 5] The act of Congress under which the proceeding is inaugurated declares "training camps" to be one of the purposes for which condemnation proceedings may be commenced. That training camps are public purposes cannot be questioned. Shoemaker v. United States, 147 U. S. 282, 298, 13 Sup. Ct. 361, 37 L. Ed. 170. It does not follow that the fact that the exact sum of money with which to pay for property may not be in hand is necessary to the maintenance of the proceeding. This is apparent from the fact that not infrequently specific sums may be named at which the property may be acquired. The allowance of a larger or smaller sum neither affects the legality of the proceeding nor the right of the citizen to receive what is justly due him. Shoemaker v. United States, supra, 147 U. S. 302, 13 Sup. Ct. 361, 37 L. Ed. 170; In re Manderson (C. C. A. 3d Circuit) 51 Fed. 501, 2 C. C. A. 490.

The court should be jealous in every case to see that the property is only taken upon just compensation being paid therefor, and the condemnation does not pass title until the land sought to be taken is paid for. The case of United States v. Gettysburg Electric Ry. Co., 160 U. S. 668, 683, 684, and 685, 16 Sup. Ct. 427, 40 L. Ed. 576, will be of interest, as bearing on the necessity for an appropriation in the exercise of the right of condemnation.

[6] Recurring to the question raised as to the right to proceed in this court, it seems almost too well settled now to be the subject of serious consideration, Congress having by Act Aug. 1, 1888, c. 728, 25 Stat. 357 (Comp. St. §§ 6909, 6910), in terms provided that such proceedings instituted by the Secretary of the Treasury or any other officer of the government, seeking to acquire property for the United

States by condemnation, or under judicial process, may be instituted whenever it is necessary or advantageous to the government so to do, and that the United States District Courts of the district where the land lies, shall have jurisdiction of such proceedings.

In Chappell v. United States, 81 Fed. 764, 26 C. C. A. 600, a decision of the Circuit Court of Appeals of this circuit, it was held that under the provisions of the act of Congress under which these proceedings are inaugurated the Attorney General may, at his election, proceed in either the state or federal court. This case was subsequently passed upon by the Supreme Court of the United States and affirmed. 160 U. S. 509, 510, 16 Sup. Ct. 397, 40 L. Ed. 510.

It follows, from what has been said, that the pleas to the jurisdiction and demurrer filed to the petition should be overruled, and the motion to dismiss denied.