## ATLANTIC FRUIT CO. v. RED CROSS LINE.

(Circuit Court of Appeals, Second Circuit. December 8, 1924.)

No. 103.

**1. Evidence ⬦43(4)—Circuit Court of Appeals may take cognizance of opinions of other courts, and examine records to ascertain grounds.**

The Circuit Court of Appeals may take cognizance without plea or proof of the judicial opinions of federal and state courts, and may examine record to ascertain grounds on which opinion is based, but need not accept, as proved, facts so regarded by court in writing opinion.

**2. Admiralty ⬦26—Remedy offered by admiralty for settlement of disputes under charter party not affected by state Arbitration Law.**

Arbitration Law of New York, though affording a remedy in respect of charter party, has no effect on whatever remedy admiralty offers for settlement of disputes arising under same charter party.

**3. Shipping ⬦39—Noncompliance with agreement for arbitration did not bar admiralty suit for charter hire and expenses.**

Noncompliance with agreement in charter party to arbitrate disputes arising under charter party was not bar to suit in admiralty for nonpayment of charter hire and expenses.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Atlantic Fruit Company against the Red Cross Line. Decree for libelant (276 F. 319), and respondent appeals. Affirmed.

Libel herein was filed June 4, 1920. It is a very simple claim for nonpayment of charter hire and expenses. Answer was filed in the following November and three defenses set up:

(1) Denial of certain material allegations of the libel.

(2) The fact that the charter party sued on contained the common agreement that: "Should any dispute arise between owners and charterers, the matters in dispute shall be referred to three persons in New York, one to be appointed by each of the parties herein and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award this agreement may be made a rule of court."

Further, that the matter in suit was a dispute between owner and charterer and that respondent (charterer) had been at all times willing to arbitrate and had named an arbitrator, but that libelant had refused to proceed with the arbitration.

(3) That the master of the chartered steamer had failed to comply with the charter party provision that the voyage should be prosecuted with the utmost despatch, but had, on the contrary, delayed his voyage to the damage of respondent in a sum far greater than the amount of hire, etc., sued for by libelant.

To the second defense libelant promptly excepted, the exception was sustained, and the defense stricken out by interlocutory order entered 14th October, 1921, by Mack, J., whose opinion is reported in (D. C.) 276 F. 319. The cause then proceeded to trial, respondent did not make good its third defense, and final decree in favor of libelant was entered in January, 1924, substantially for the sum demanded in the libel.

From this decree respondent appealed, assigning for error substantially the action below in sustaining exception to the second defense.

The foregoing covers all the material contents of the apostles. This court, however, is called on to take cognizance of the decision of the Supreme Court of the United States in Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582, and it is asserted by appellant that such cognizance requires not only notice of the propositions of law decided in the reported case, but knowledge of such facts as were laid before the Supreme Court by its transcript of record therein.

An examination of that transcript shows after the institution of this suit, and in April, 1921, respondent herein moved in the Supreme Court of the State of New York, County of New York, for an order pursuant to the Arbitration Law of New York (chapter 275 of 1920, and chapter 14 of 1921 [Consol. Laws, c. 72]), requiring Atlantic Fruit Company (libelant herein) to "proceed to arbitration as provided for in the (charter party), and appoint its arbitrator on or before" a certain day in August, 1921.

From an order accordingly Atlantic Fruit Company appealed to the appropriate Appellate Division of the New York Supreme Court (Matter of Red Cross Line, 199 App. Div. 961, 191 N. Y. S. 949); that court affirmed the order, whereupon further appeal was taken to the Court of Appeals of New York, which reversed it (233 N. Y. 373, 135 N. E. 821).

Certiorari was granted, and the Supreme Court of the United States reversed the order entered pursuant to the remittitur of the

Court of Appeals of New York and reinstated the original order directing the arbitration to proceed. The final order on the mandate of the Supreme Court of the United States was entered April 2, 1924, i. e., about a month after the appeal at bar had been taken.

It thus appears that there was what each party regarded as a dispute under this charter party. To settle that dispute the owner first began this suit. The charterer set up the arbitration clause as a defense, but did not until several months after it had answered herein attempt to enforce arbitration by means of the New York statute. The court below refused to consider the pleading good, and while this case was standing for trial the charterer began proceedings under the New York statute, and since that time, in April, 1921, these two matters have both been going on in the manner above shown, until at the present time there is a final order in the New York court requiring arbitration to proceed, apparently about a matter as to which there is a final decree in the United States District Court based upon pleadings which (excluding the second defense, supra) embrace the whole matter in controversy.

The explanation of charterer's delay in applying for arbitration under the New York statute is that the charter party herein is a contract dated November 28, 1919, or before the passage of the New York Arbitration Law, and it was the holding of the New York courts prior to decision in Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, 130 N. E. 288, that the statute did not apply to contracts made prior to its enactment. The Berkovitz Case (decided March 1, 1921) settled the matter the other way, and thereupon and in the following month this charterer-respondent began at the Special Term of the New York Supreme Court its proceeding for arbitration, which terminated in the Supreme Court of the United States on February 18, 1924, in Red Cross Line v. Atlantic Fruit Co., supra.

Loomis & Ruebush, of New York City (Homer L. Loomis and Reginald B. Williams, both of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall and Edna Rapallo, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] That we may take cognizance without plea or proof of the judicial opinions of any state in the Union is undoubted (Vagaszki v. Consolidation Coal Co., 225 F. 913, 141 C. C. A. 37), and a fortiori is this true of the opinions of United States courts. How far this notice of opinions permits the investigation of the record that produced the opinion is a subject not free from doubt. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Re Manderson, 51 F. 501, 2 C. C. A. 490. We think it clear, however, that it is permissible to examine the record resulting in an opinion, to ascertain the grounds upon which the opinion is based. This does not imply acceptance as proven facts, of what the court writing the opinion so regarded.

Material to this appeal there are no controverted facts, and we have therefore excerpted from the transcript in the Supreme Court of the United States the history of events above given. This action is not to be taken as a precedent for a right so to do in respect of any matter of fact denied or doubted.

The arbitration statute of New York changed the common law, or at least the common-law method of thinking about arbitration in that state. What New York and other courts regarded as the "common-law limitation upon enforcement of promises to arbitrate" was a part of the law of remedies, which is always a portion of the law of the forum. Therefore the statute itself relates altogether to remedies. Such is the ruling of the New York Court of Appeals. Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, at page 270, 130 N. E. 288, 290. This, as the learned court declares, is because "arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. (The statute) did not attach a new obligation to (contracts) already made. It vindicated by a new method the obligation then existing."

Since The Lottawanna, 21 Wall. 558, 22 L. Ed. 654, it seems superfluous to further discuss the proposition that the states acting through their Legislature or their courts cannot create a new remedy enforceable in the admiralty, nor take away any remedy there already existing. There are instances in which new substantive legal rights created by the states may be enforced by remedies of its own in the admiralty, but it is entirely plain that this matter of arbitration, whether based on a New York statute or resting upon traditional and judge-made law, is wholly matter of remedy.

[2] We therefore hold that the Arbitration Act of New York, although affording a remedy in respect of this charter party, has no effect upon whatever remedy the admiralty offered for the settlement of disputes arising under the same charter party.

But even admitting this point, it is strenuously urged that the arguments presented at this bar when The Atlanten, 252 U. S. 313, 40 S. Ct. 332, 64 L. Ed. 586, was before us (Aktieselskabet Korn-og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten, 250 F. 935, 163 C. C. A. 185, Ann. Cas. 1918E, 491), and in The Eros, 251 F. 45, 163 C. C. A. 295, have now received such additional strength by the decision of the Supreme Court in Red Cross Line v. Atlantic Fruit Co., supra, that it is our duty to reverse the interlocutory order entered herein on the opinion of Mack, J., supra, and hold that the second defense was good.

In other words, we are asked to assume that the Supreme Court, without the compulsion of any statute, is now ready to hold that in proceeding upon an executory contract containing an agreement to arbitrate any and all disputatious matters arising therefrom, no action would lie upon an arbitrable dispute, if the party sued pleads (as here) the arbitration clause and willingness to abide thereby.

This is asking a good deal. For some years, and certainly since the publication in 1918 by the Chamber of Commerce of the City of New York of Mr. J. H. Cohen's "Commercial Arbitration and the Law," argument over this matter has arisen in many places and been presented to many courts.

It is common knowledge that this movement resulted in the New York Arbitration Act, and it is similarly known that efforts to induce the Congress to pursue substantially the same course have hitherto failed. Thus without legislation, and because the trend of modern opinion is toward the literal enforcement of the contracts of men of mature years and presumably sound mind, this court is asked to provide some method of overriding, or explaining away not only its own previous decisions but those of the Supreme Court, which for a generation or so have been regarded as declaring the law to be that any agreement contained in an executory contract, ousting in advance all courts of every whit of jurisdiction to decide contests arising out of that contract, will not be enforced by the courts so ousted.

It is true enough that the executory contract to arbitrate is not usually denounced as per se illegal, but the rulings amount to the same thing in the end, for courts will not specifically enforce arbitration but leave the party who wishes to arbitrate to bring suit for breach of the contract so to do, and award him nominal damages. Munson v. Straits of Dover (D. C.) 99 F. 787.

The matter is one of general law. We are not in the technical sense "bound" by state decisions; but we are bound by the authoritative language of the Supreme Court of the United States until that tribunal and none other concludes to reverse what it has declared for law, or precipitate by the chemistry of new language, all meaning out of what it has said aforetime.

The general doctrine (probably arguendo) was set forth by Hunt, J., in Insurance Co. v. Morse, 20 Wall. 445, 451, 452, 22 L. Ed. 365. There it was assumed as the basis for further argument that the well-known principle announced by Story, J., in his Commentaries on Equity Jurisprudence, was sound law.

The rule was relied on by dwelling on the exception in Hamilton v. Home Ins. Co., 137 U. S. 370, 385, 11 S. Ct. 133, 34 L. Ed. 708, which was merely a repetition of the assumption and course of argument pursued in Hamilton v. Liverpool Co., 136 U. S. 242, 255, 10 S. Ct. 945, 34 L. Ed. 419. As for the lower courts, the adherence to the doctrine thus recognized in the Supreme Court could be shown by wearisome citations, of which one of the latest, showing the elementary form which the question has long assumed, is Robert Grace Co. v. Chesapeake, etc., Co. (C. C. A.) 281 F. 904.

The point has been conveniently presented before now to the Supreme Court. The appeal in The Atlanten, supra, afforded an opportunity which was confessedly avoided because, as Holmes, J., remarked (252 U. S. at page 315 [40 S. Ct. 333]), "it is not necessary to [decide the matter] in order to decide the case before us."

And in the case so pressed on us (264 U. S. 109 [44 S. Ct. 274]), Brandeis, J., confined opinion very carefully to the New York statute, while remarking (page 120 [44 S. Ct. 276]) that the "federal courts like those of the states and of England have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to enforce executory agreements to arbitrate disputes."

That refusal still continues, and it is not only permitted, but generally believed to be required by the decisions of the Supreme Court, if adherence to the spirit as well as

the letter of controlling opinion be loyal obedience to the precedent system.

The situation above depicted is beyond all question one that calls for remedial action. Yet those recognizing the evil, recognize also the difficulty of devising a remedy suitable to agreements like charter parties, made in all parts of the world, to be performed on any waters and where the natural, yet tyrannical inclination of the stronger party to the bargain will be to insert a clause requiring arbitration in his own "home town."

This particular charter party called for arbitration in New York. It is common knowledge, however, that the majority of such charters, especially if they be on time and not for a voyage, are drawn with provisions for arbitration in London, and with an eye to the existing arbitration statutes of Great Britain.

Very wisely, the New York Court of Appeals called attention to this difficulty in Berkovitz v. Arbib & Houlberg, 230 N. Y. at page 273, 130 N. E. 288, and especially reserved the question (not yet presented) whether the New York statute can or should be so read as to cover arbitrations in foreign parts.

[3] This is but one of the thorny questions presented by the demand that we abandon, overrule, or explain away a multitude of decisions, and hold that a general agreement to arbitrate all questions arising under the contract in which the agreement is inserted is a good bar in admiralty to suit for breach of said contract.

Until that tribunal whose decisions are binding upon us takes that step, we cannot do it. Whether any court by decision can cover all the ramifications of doubt, the confusion and possible injustice that would arise from such holding may well be doubted. But that the situation is one calling for legislative action seems to us free of all doubt.

Decree affirmed, with costs.