9 U.S. 335
 5 Cranch 335
 3 L.Ed. 117
 YEATON
v.
FRY.
 February Term, 1809
 
 1
 ERROR to the circuit court of the district of Columbia, in an action on the case upon a policy of insurance on the brig Richard, at and from Tobago to one or more ports in the West Indies, and at and from thence to Norfolk. The following clause was inserted in the body of the policy. 'This insurance is declared to be made against all risks, blockaded ports and Hispaniola excepted.' And at the foot of the policy was the following memorandum: 'Warranted by the assured free from any charge, damage or loss, which may arise in consequence of seizure or detention of the property, for or on account of illicit or prohibited trade.'
 
 
 2
 On the trial of the general issue, four bills of exception were taken in the court below by the plaintiff in error.
 
 
 3
 1. The first was to the admission in evidence of certain copies of the proceedings and decree of the vice-admiralty court at Jamaica, ordering a sale to pay the salvage of the brig. The copies were authenticated by the following certificates, viz. 'Jamaica, ss. I, Adam Dolmage, Esq. deputy of Owsley Rowley, Esq. chief registrar and scribe of the acts, causes and businesses of the court of vice-admiralty within the said island, duly constituted, appointed and sworn, do hereby certify and make known to all whom it doth or may concern, that the several sheets of paper writing hereunto annexed, in number fifteen, and marked or numbered from No. 1. to No. 15. inclusive, do contain a true copy and transcript of certain process and proceedings, had, moved, and prosecuted to interlocutory decree in the said court, in a certain cause therein lately depending, entitled, 'Brig Richard, Jacobs, master.' In which cause Benjamin Jacobs hath duly filed his claim thereto in the said court; and I further certify, that I have carefully compared and examined the same with the originals remaining of record in my office.
 
 
 4
 'In faith and testimony of the truth whereof, I the said Adam Dolmage have hereunto set my hand; and the seal of the said court of vice-admiralty hath been caused to be hereunto affixed in the city of Kingston, in the said island, the seventh day of January, one thousand, eight hundred and seven.
 
 
 5
 'ADM. DOLMAGE, Dep. Reg. Vic. Cur. Adm.'
 
 
 6
 'Jamaica, ss. I, Henry John Hinchliffe, Esq. judge and commissary of the court of vice-admiralty, in the island of Jamaica, do hereby certify and make known to all whom it may concern, that Adam Dolmage, Esq. who has signed and attested the certificate hereunto annexed, is deputy registrar of the said court of vice-admiralty, and that to all acts and instruments by him signed and attested, in such his capacity, due faith and credit is and ought to be given in judgment, court, and without. In testimony whereof, I have hereunto set my hand, and caused the seal of the court of vice-admiralty aforesaid to be affixed, this sixteenth day of September, 1807.
 
 
 7
 (Seal.) 'Henry John Hinchliffe.'
 
 
 8
 'Jamaica, ss. I, Robert Robertson, secretary, and notary public, of this his majesty's island of Jamaica, duly admitted, allowed and sworn, dwelling in the city of Kingston, in the county of Surety, and island aforesaid, do hereby certify and make known to all whom these presents may concern, that Henry John Hincliffe, Esq. by whom the annexed certificate is signed, is judge and commissary of the court of vice-admiralty of the island of Jamaica aforesaid, and that to all acts and instruments in writing by him the said Henry John Hinchliffe, Esq. attested, due faith and credit is and ought to be given. In testimony whereof, I, the said motary, have hereunto affixed my hand and seal of office, at Kingston aforesaid, this fifth day of October, Anno Domini one thousand, eight hundred and seven.
 
 
 9
 (Seal.) 'Rob. Robertson, Sec. and N. Pub.'
 
 
 10
 It was further testified by competent witnesses, examined upon oath by the court, that the said Henry J. Hinchliffe, in the year 1804, publicly sat as a judge of, and held the court of vice-admiralty in Jamaica, and in that capacity condemned the vessel of one of the witnesses, who, in the island of Jamaica, received from his proctor a copy of the proceedings in the said court in his cause, which copy was authenticated in the same manner as the paper now offered in evidence, and under a similar seal; and that upon producing that copy to the underwriters in Alexandria and in Philadelphia, the loss was paid without delay. That similar papers, purporting to be copies of proceedings in the same court of vice-admiralty in other cases, had been received in this country by other persons, and had been considered by both insurers and insured as authentic papers, and losses had been paid thereon; and that the present paper was shown to the defendant, who did not object to its authentication, but refused to pay the loss for other reasons. But neither of the witnesses had ever seen the judge write, nor the act of affixing the seal of the court to any paper.
 
 
 11
 2. The second bill of exceptions stated, in substance, that the defendant (the plaintiff in error) prayed the court to instruct the jury, that if at the time the brig Richard sailed from Tobago for Curracoa, the latter island was actually blockaded, and the brig turned away by the blockading force, and afterwards lost, without again attempting to enter Curracoa, and in the prosecution of her voyage to Norfolk, the plaintiff below was not entitled to recover, although no official notification of such blockade was ever published, and although the master of the brig was ignorant of such blockade until he met with the blockading force. Which instruction the court refused to give.
 
 
 12
 3. The third bill of exceptions stated, that the plaintiff below offered to read in evidence certain depositions taken in Tobago, under a commission issued at the instance of the defendant, and the court, being satisfied that the plaintiff's attorney had agreed to receive, and did receive and transmit to the plaintiff, notice of the time and place of taking such depositions, suffered the plaintiff to read them in evidence to the jury.
 
 
 13
 4. The fourth bill of exceptions was to the opinion of the court given to the jury at the request of the plaintiff, that if at the time the brig sailed from Tobago for Curracoa the latter island was not a blockaded port by notification of the British government to the American nation, but was blockaded in fact, and if the master was ignorant of such blockade until he was warned off by the blockading force, and being so warned he did not again attempt to enter the blockaded port, but changed his course intending to come directly to Norfolk, and in the prosecution of such voyage to Norfolk was captured by a French cruiser, and recaptured by an English vessel, carried into Jamaica, libelled, condemned and sold under a decree of the vice-admiralty court of that island, then such sailing from Tobago for Curracoa, and from thence to Norfolk, was a lawful voyage within the meaning of the contract of insurance, and not within the exception in the policy, and the plaintiff was entitled to recover against the underwriters an indemnity for the loss sustained by such capture, recapture and sale.
 
 
 14
 Youngs, for the plaintiff in error, contended,
 
 
 15
 1. That blockaded ports were absolutely excepted from the policy, and, consequently, there was no insurance if the vessel sailed for a blockaded port. The exception amounts to a warranty that the vessel shall not sail for a blockaded port; and the insured takes upon himself the chance of the port being blockaded. Park, 322. 367. Kenyon v. Berthow.
 
 
 16
 2. That the copy of the proceedings of the court of vice admiralty, at Jamaica, was not sufficiently authenticated to be admitted in evidence. The act of congress does not designate any mode of authentication of foreign papers, but has left that subject entirely to the state legislatures. As the court below was sitting at Alexandria, it ought to have been governed by the act of assembly of Virginia of December 8, 1792, (Revised Code, 168. fol. ed.) which requires, besides the attestation of a notary public, 'a testimonial from the proper officer of the city, county, corporation, or borough where such notary public shall reside, or the great seal of such state, kingdom, province, island, colony, or place beyond sea.'
 
 
 17
 In the case of Church v. Hubbart, 2 Cranch, 238. this court said, that foreign judgments were to be authenticated, either by an exemplification under the great seal, or by a proved copy, or by the certificate of an officer authorized by law, which certificate itself must be properly authenticated. The proper authentication, under the laws of Virginia, is the testimonial mentioned in the act of assembly, or the great seal of the colony or island.
 
 
 18
 3. With regard to the depositions taken on behalf of the defendant, and which the plaintiff wished to use on the trial, they ought not to have been read for the plaintiff, because they had not been taken in such a manner as to authorize the defendant to use them against the plaintiff.
 
 
 19
 This court has determined that notice to an attorney at law is not such notice as is required by the act of assembly of Virginia, for taking depositions, and the attorney could not admit, or waive notice but upon record.
 
 
 20
 E. J. Lee and C. Lee, contra, were stopped by the court as to the first point.
 
 
 21
 2. As to the copy of the proceedings in the court of vice-admiralty, they took a distinction between the proceedings of municipal courts, and courts of the law of nations. The seals of courts of admiralty, in cases under the law of nations, are admitted in evidence without further authentication, because they are courts of the whole civilized world, and every person interested is a party. 1 Rob. 296. The Maria. Gilb. Law of Ev. 22, 23. This was admitted by the counsel on both sides in the case of Church v. Hubbart, referred to by the opposite counsel.
 
 
 22
 Besides, these proceedings are authenticated in the manner provided by the 19th article of the British treaty of 1794.
 
 
 23
 Jones, in reply.
 
 
 24
 The exception in the policy was not intended merely to exclude the risk of attempting to enter a blockaded port, but excluded all risks if the vessel should sail for a port actually blockaded. The trade with a blockaded port is an illegal trade, and there is an express warranty at the foot of the policy against all losses arising from seizure for or on account of illicit or prohibited trade. The exception, therefore, must have been intended to provide for something else. Can it be contended that if the vessel had sailed for Hispaniola, the underwriters would have been liable for a loss, happening in any manner whatsoever? Yet blockaded ports and Hispaniola are equally excepted, and in the very same words. A voyage to such a port is as much excluded from the policy as a voyage to Hispaniola. The exclusion of particular ports amounts to a warranty that the vessel shall not sail to such ports; and if a warranty be not complied with, the underwriters are not bound, whatever may be the cause of the non-compliance, and whether the loss happened in consequence of such non-compliance, or not. It is a condition precedent; and an innocent, an ignorant, or a compulsive violation of a warranty, however immaterial, avoids the contract of insurance. Park, 318. 326. 363. 369. Marshall, 348. 354.
 
 March 13.
 
 25
 MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.
 
 
 26
 The material question in this case grows out of an exception in a policy of insurance.
 
 
 27
 The plaintiff insured a specified sum on the brig Richard, belonging to the defendant, 'at and from Tobago to one or more ports in the West Indies, and at the from thence to Norfolk;' and the insurance is declared to be made against 'all risks, blockaded ports and Hispaniola excepted.'
 
 
 28
 The Richard sailed from Tobago for Curracoa, which was then blockaded in fact, but the blockade was not known at Tobago when the vessel sailed, nor was it known to the captain until he was warned off by a British ship of war. He then sailed for Norfolk; but on his voyage was captured by a French privateer, by whom the vessel was plundered to a considerable extent, and ordered to St. Domingo for trial.
 
 
 29
 The question is, whether this risk comes within the exception contained in the policy.
 
 
 30
 The counsel has considered the exception as a warranty; but the court cannot so consider it. The words are the words of the insurer, not of the insured; and they take a particular risk out of the policy which, but for the exception, would be comprehended in the contract.
 
 
 31
 What is that risk?
 
 
 32
 Policies of insurance are generally the most informal instruments which are brought into courts of justice; and there are no instruments which are more liberally construed, in order to effect the real intention of the parties, if that intention can be clearly ascertained.
 
 
 33
 In that part of the policy on which the present controversy depends, a few words are given, to which others must be subjoined in order to complete the sense, and give a full description of the risk against which the underwriters were unwilling to insure. These words are, 'blockaded ports and Hispaniola excepted.'
 
 
 34
 It is reasonable to suppose that a voyage to Hispaniola was not insured. The assured has notice of this, and if he sails for Hispaniola, the voyage is entirely at his own risk. Against the risks of such a voyage, whatever they may be, the underwriters will not insure. It is a specified place, excluded, by consent, from the policy. The perils attending the voyage are understood, whether they arise from the sea, or otherwise, and are all excepted. The motives for making the exception do not appear, nor can they be inferred from the instrument.
 
 
 35
 The plaintiff in error contends that the same reasoning applies, in its full extent, to the exception of blockaded ports; but the court does not think so.
 
 
 36
 Hispaniola is excepted absolutely from the policy; but other ports are within the terms of the voyage insured, if they be not blockaded. It is their character, as blockaded ports, which excludes them from the insurance. Their being excepted by this character is thought to justify the opinion, that it is the risk attending this character which produces the exception, and which is the risk excepted. The risk of a blockaded port, as a blockaded port, is the risk incurred by breaking the blockade. This is defined by public law. Sailing from Tobago for Curracoa, knowing Curracoa to be blockaded, would have incurred this risk, but sailing for that port, without such knowledge, did not incur it.
 
 
 37
 The underwriter had no objection to a voyage to Curracoa, other than might arise from its being blockaded. The dangers of the blockade, therefore, were the particular dangers which induced the exception, and it seems to the court that the exception ought not to be extended beyond them. If this be correct, the circuit court committed no error in refusing to give the opinion which was required by the counsel on this point.
 
 
 38
 The sentence in this case is sufficiently authenticated to be received as evidence. Being a court acting under the law of nations, its proceedings may be proved according to the mode observed in the present case; and were this doubtful, that doubt would be removed by the circumstance that it is the form stipulated by treaty.
 
 
 39
 The defendant is not at liberty to except to his own depositions, because he does not produce proof of his having given notice to the plaintiff. The admission of notice by the plaintiff is certainly sufficient, if notice to him was necessary, to enable him to use the defendant's deposition.
 
 
 40
 The fourth bill of exceptions depends on the principles stated by the court, in the first part of this opinion.
 
 
 41
 There is no error in the judgment of the circuit court, and it is affirmed, with costs.