## Peters, Appellant, *v.* Vesta Coal Company.

*Negligence—Mines and mining—Master and servant—Mine foreman—Superintendent—Bituminous Act of May 15, 1893, P. L. 52—Mine posts—Assumption of risk—Evidence—Nonsuit.*

1. The Bituminous Act of May 15, 1893, P. L. 52, makes it the duty of the mine foreman in the first instance to see to it that proper timbers to support the roof of the mine are sent into the working places thereof when required; if the absence of posts for this purpose is due alone to the mine foreman's neglect, there can be no recovery against the mine owner for injuries sustained in consequence thereof.

2. Where in such case it appears that the mine foreman has neglected this duty, and that the mine owner has knowledge, through his superintendent or otherwise, of such neglect, and of the dangerous condition of the mine, and fails to remedy it, he may be held liable in the event of an accident.

3. Where a miner is injured in consequence of failure to supply proper posts for the support of the roof, but it does not appear that he complained to the mine foreman of the dangerous condition of the place where he was working, and his testimony that he asked this official for better supports was vague, indefinite and lacking in detail, and the only testimony of notice to the defendant, the mine owner, was of the same character and was not sufficient to support a finding that the superintendent was made to understand that the foreman was in default, and that an emergency existed which required the immediate delivery of the posts, there can be no recovery.

4. Where in such case it is plain beyond any reasonable doubt that plaintiff had full knowledge and appreciation of the obvious and imminent dangers of his position, and did not rely on the supposed superior judgment of the superintendent of the mine, or upon his promise to supply plaintiff with the required timbers, plaintiff must be deemed to have assumed the risk of accident.

Argued Oct. 24, 1913. Appeal, No. 149, Oct. T., 1913, by plaintiff, from judgment of C. P. Allegheny Co., Aug. T., 1910, No. 394, of compulsory nonsuit in case of Henry Peters v. Vesta Coal Company. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Carnahan, J.

The opinion of the Supreme Court states the facts.

The trial judge entered judgment of compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Meredith R. Marshall,* with him *Rody P. Marshall,* for appellant.

*Andrew M. Linn,* with him *Clarence Burleigh* and *W. A. Challener,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

On May 1, 1909, the plaintiff, Henry Peters, was injured by the fall of the roof of a room in which he was working in the defendant company's mine. He averred in his statement of claim that a short time prior to the date of the accident he had "complained to the defendant company that said roof of said room was improperly supported, in that the posts used were too short, and at that time the defendant promised plaintiff to have posts of the proper length provided, and assured the plaintiff that it was safe to go on working until such time as proper length posts were supplied, that plaintiff relied upon said promise and assurance, and continued to work in said room," and that his injuries "were caused through the negligence of the defendant company in failing to supply the proper posts or supports......after promising to do so." The trial judge entered a nonsuit, which the court below refused to take off; hence this appeal.

The mine in question was subject to the Bituminous Act of May 15, 1893, P. L. 52, which provides in section 1, of Article VI, that the mine foreman shall see that all dangerous roofs are "secured against falling" and that sufficient "props, caps and timber of suitable size" are sent into the "working places of the mine" when required for that purpose; in section 2, that every workman in want of props "shall notify the mine foreman" at least one day in advance, giving the length and number required, "but in cases of emergency the timbers may be ordered immediately," further, "if from any cause the timbers cannot be supplied when required, he (the mine foreman) shall instruct the persons to vacate all said working places until supplied with the timber needed"; in section 6, "The mine foreman shall give prompt attention to the removal of all dangers reported to him...... and shall direct that each and every working place be properly secured by props and timbers"; in section 1, of Article VII, "It shall be the duty of the superintendent

on behalf of and at the expense of the operator to keep on hand at the mine at all times, a full supply of all materials and supplies required to preserve the health and safety of the employees as ordered by the mine foreman and required by this Act"; in section 2, "The superintendent shall not obstruct the mine foreman" in the fulfillment of his duties; in rule 12, of section 1, of Article XX, "He (the miner) shall examine his working place before beginning work and take down all dangerous slate or otherwise make it safe by properly timbering the same before beginning to dig or load coal......and he shall at all times be very careful to keep his working place in safe condition during working hours"; and rule 13, "should he at any time find his place becoming dangerous, either from gas or roof,......he shall at once cease working."

The defendant employed both a superintendent and a certified foreman, and the evidence shows that it had on hand at the mine a full supply of proper posts. The act made it the duty of the foreman, in the first instance, to "see to it" that these timbers were sent into the "working places of the mine" when required; so if the absence of the posts was due alone to the mine foreman's neglect of this statutory duty, the plaintiff could not recover in this action. But the plaintiff contends that the evidence was sufficient to bring this case within the authorities which rule that, under certain conditions, where the defendant has knowledge, through his superintendent or otherwise, of the neglect of the foreman, and the dangerous condition of the mine, and fails to remedy it, he can be held liable in the event of an accident: Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204; Bogdanovicz v. Susquehanna Coal Co., 240 Pa. 124. It nowhere appears, however, that the plaintiff complained to the foreman concerning the place in which he was working, and the only testimony as to his request of that official for longer posts is contained in his answer to this question, "Whom did you ask for posts before you asked the superintend-

ent for them?", to which he replied, "I asked before the hill boss, that was the first one, and after then, the pit boss (meaning the mine foreman)." The plaintiff states that he did not get the posts and that the day before the accident he met the superintendent on the street when the following conversation took place: "I told him about that I had asked everybody for longer posts, and they never sent me in any, and the place is too dangerous, and I need ten feet long posts, and he said, 'All right go in, I'll attend to that......Go in, I will send you now good ones.'......" After considering all the proofs, we are of opinion that the evidence relied upon is too vague, indefinite and lacking in detail to justify a finding that the superintendent should have understood that the mine foreman was in default and that an emergency existed which required the immediate delivery of the posts. But, more than this, the testimony makes it plain, beyond any reasonable doubt, that on the morning of the accident the plaintiff had full knowledge and appreciation of the obvious and imminent dangers of his position, and did not rely on the supposed superior judgment of the superintendent of the mine or on the latter's promise to supply him with the required timbers; in fact, he did not even go so far as to assert in his testimony that he so relied.

This is a clear case of one with knowledge and appreciation of danger taking a chance and getting hurt. The plaintiff was an educated miner of twenty-one years' experience, who had served eight years as a pit boss and had been working in the defendant's mine for about five months. He stated that he was more able to cope with mine dangers than the average man and that that was why he had been put to work in the particular place where he was hurt; that he knew the dangers of the situation; that within half an hour before he was injured some of the rock fell from the roof of the room in which he was working and knocked some of the props out; and that these props were so short that he would

"not hear the rock crack at the top should the ceiling start to fall." He admitted that he had the necessary tools at hand to utilize the posts in the room that were immediately available to him, yet, on the morning of the accident he did not undertake to protect himself by properly setting any of these supports, but preferred to wait for longer timbers to be sent to him, and with his knowledge and the warning from the falling rock continued in this place of danger.

The case at bar is readily distinguishable from Collins v. Northern Anthracite Coal Co., 241 Pa. 55, relied upon by the appellant. In the first place, the Bituminous Coal Act differs somewhat from the Anthracite Act in the provisions concerning the furnishing of posts, or "props," as may be seen by a comparison of the references to the latter act in the Collins case and our excerpts from the former act in the present opinion. In the Collins case the defendant's superintendent had ample knowledge of the default of the foreman, and the miner clearly relied upon the superintendent's promise to furnish him the necessary props; moreover, the plaintiff took such proper precautions as he could for his own protection, and they indicated that there was no obvious or immediate danger; all of which made the case one for the jury. But on the facts at bar a nonsuit was proper, and no error was committed in the refusal to take it off; had it been reasonably possible to draw inferences from the proofs that would support the plaintiff's case, of course, the issues would have had to go to the jury, but this was not the case, for on the testimony produced, two conclusions were inevitable: (1) that for an appreciable length of time before the accident, the condition of the room in which the plaintiff was employed was so openly and plainly dangerous that a man of common prudence would not have worked under the roof until properly braced, and (2) that the plaintiff, knowing the conditions and realizing the danger, assumed the risk. The plaintiff failed to sustain the aver-

ments of his statement of claim, and on his own showing, neither under the governing act of assembly or the principles of the common law did he prove a case against the defendant.

The judgment is affirmed.