## VAGASZKI v. CONSOLIDATION COAL CO., Inc.

(Circuit Court of Appeals, Second Circuit.   August 16, 1915.)

No. 280.

1. EVIDENCE ☞29, 43—JUDICIAL NOTICE—STATUTES AND JUDICIAL OPINIONS OF STATES.

The courts of the United States take judicial notice of the statutes and judicial opinions of any state, without plea or proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 36, 37, 39, 43–46, 48, 62–65; Dec. Dig. ☞29, 43.

Judicial notice of public laws and regulations, see note to Smith v. City of Shakopee, 44 C. C. A. 4.]

2. COURTS ☞366—AUTHORITY OF DECISIONS OF STATE COURT—STATUTES—CONSTRUCTION.

An action in a federal District Court of New York for the death of a miner in a coal mine located in Pennsylvania is governed by the Bituminous Mining Act of Pennsylvania (Act May 15, 1893 [P. L. 52]), re-enacted as construed by the courts of Pennsylvania, to the effect that a mineowner is not liable for the negligence of a mine foreman or his assistants committed in the discharge of duties imposed by the act.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. MASTER AND SERVANT ☞270—DEATH OF SERVANT—EVIDENCE—ADMISSIBILITY.

In an action for the death of a miner in Pennsylvania by rock falling on him, testimony of a conversation, two weeks before the accident, between a witness and the assistant mine foreman, in which the witness asked the official for crossbars, was remote, and properly stricken out as too remote.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. ☞270.]

4. MASTER AND SERVANT ☞278—DEATH OF SERVANT—EVIDENCE—ADMISSIBILITY.

The testimony of a witness that about two weeks before the accident he had asked the assistant superintendent of the mine for crossbars did not, under the decisions of the Supreme Court of Pennsylvania construing the act, show that the mine foreman had been in default.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

5. MASTER AND SERVANT ☞220—DEATH OF SERVANT—ASSUMPTION OF RISK.

A bituminous coal miner, who continues at work after noncompliance with his request for crossbars and a buddy, assumed the risk of injury by falling rock, in view of Bituminous Mining Acts of Pennsylvania of 1893 and 1911, making it the duty of the miner to quit work on failure to furnish the crossbars and buddy.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 625–637, 641, 644–647; Dec. Dig. ☞220.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

6. DEPOSITIONS ☞90—ADMISSIBILITY—STATUTORY PROVISIONS.

A deposition taken by a party, under Rev. St. § 863 (Comp. St. 1913, § 1472), providing that the testimony of any witness may be taken by

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

225 F.—58

deposition de bene esse when he lives at a greater distance than 100 miles from the place of trial, may not be introduced in evidence, in view of section 865 (Comp. St. 1913, § 1474), providing that, unless it appears that the witness is dead, or has gone to a greater distance than 100 miles from the place of trial, the deposition shall not be used, when the witness was present and available, though not called by the party.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 248–255, 258–260; Dec. Dig. ☞90.

Use of deposition when deponent is present, see note to Texas & P. Ry. Co. v. Watson, 50 C. C. A. 232.]

7. APPEAL AND ERROR ☞1029—HARMLESS ERROR—ERRORS NOT AFFECTING RESULT.

A judgment will not be reversed for errors committed against a defeated party not entitled to succeed in any event.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4035, 4036; Dec. Dig. ☞1029.]

8. APPEAL AND ERROR ☞1050—HARMLESS ERROR—ERRORS NOT AFFECTING RESULT.

Where, in an action for the death of a miner by falling rock, competent evidence showed that decedent assumed the risk, error in admitting in evidence a deposition did not justify reversal of a judgment for defendant, introducing the deposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

9. MASTER AND SERVANT ☞211—INJURY TO SERVANT—ASSUMPTION OF RISK.

A miner in a bituminous coal mine in Pennsylvania asked for crossbars and a buddy on Saturday night, and was told, "All right." The crossbars and a buddy were not furnished, and the miner began work on Monday morning, and was killed by rock falling on him. A former miner had quit work because not furnished with crossbars and a buddy, and he testified that crossbars were needed because of a rotten roof. The assistant foreman told the miner on Saturday afternoon that he must either make the piece of rock safe or take it down, and that the rock which he found down on Monday was the rock which he advised the miner to remove or make safe. The miner was a man of mature age and of extended experience as a miner. Held that, under the Bituminous Mining Acts of Pennsylvania of 1893 and 1911, he assumed the risk of danger as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 557; Dec. Dig. ☞211.]

10. TRIAL ☞40—RECEPTION OF EVIDENCE—MANNER OF INTRODUCING DEPOSITIONS.

Where a deposition is admissible, it is proper for the court to permit one counsel for the party introducing the deposition to stand at the bar and read the questions, and the other counsel to sit in the witness chair and read the answers.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 99; Dec. Dig. ☞ 40.]

Coxe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to review a judgment upon a verdict for defendant in the District Court of the United States for the Southern District of New York.

L. B. Treadwell, of New York City (L. B. Treadwell, Roger Foster, and R. W. Darling, all of New York City, of counsel), for plaintiff in error.

Davies, Auerbach & Cornell, of New York City (Charles H. Tuttle, of New York City, Charles F. Uhl, Jr., of Somerset, Pa., and Martin A. Schenck, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This action was brought to recover damages in the sum of $30,000 for the death, on August 25, 1913, of George Vagaszki. At the time of his death he was 29 years of age, and was employed as a miner in a bituminous coal mine belonging to the defendant, and located at Jenner, in Somerset county, state of Pennsylvania. His death occurred while he was at work in mine No. 119, butt heading No. 8, second right, and was caused by a mass of rock which became detached from the roof of the heading, which struck and crushed him. There was no one with him at the time, and no one witnessed what occurred. The action is brought by the widow. The Constitution of the state of Pennsylvania provides that in case of death from injuries the cause of action shall survive, and that no act of the General Assembly shall limit the amount to be recovered in such cases. An act passed in that state in 1855, still in force, provides that the persons entitled to recover damages for any injury causing death shall be the husband, widow, children, or parents of the deceased, and that the sum recovered shall go to them in the proportion they would take his or her personal estate in the case of intestacy, and that without liability to creditors; the law of Pennsylvania on the subject being similar in import and character to the law of New York in that regard.

The action is brought by the widow of the deceased for the benefit of herself and a son of the age of six years. The theory of the action is that it was the duty of the defendant to keep the heading in the mine in which the deceased was at work in a safe and secure condition, and to properly inspect the same, and to support the roof with sufficient timbers or other suitable means; that instead of performing its duty it negligently permitted the place to be and remain in an unsafe, dangerous, and insecure condition, although its condition might have been discovered and ascertained by a proper inspection thereof; and it is averred that there was no negligence or want of care on the part of the deceased contributing to his death. The case was submitted to the jury, and a verdict was returned in favor of the defendant.

[1, 2] The courts of the United States take judicial notice of the statutes and judicial opinions of any state in the Union without plea or proof. See Lamar v. Micou, 114 U. S. 218, 5 Sup. Ct. 857, 29 L. Ed. 94. This case is governed by the Bituminous Mining Act of Pennsylvania, passed in 1893 and re-enacted in 1911, with some minor changes. The act places the management of the inner workings of a bituminous coal mine in the hands of a certified mine foreman, whose qualifications are determined by the state. Neither he nor the assist-

ants whom he appoints are agents of the mining company; and the company is not responsible for their acts, unless it has notice that an emergency of danger has arisen demanding immediate action, and that these officials are not discharging their duties with regard thereto. The mining company is also responsible if it has. failed to comply with the orders of the mine foreman. The following provisions of the act are important in determining the question involved in this case:

Article 3, section 1:

"It shall be the duty of every superintendent, on behalf and at the expense of the operator, to keep on hand at each mine at all times a sufficient quantity of all materials and supplies required to preserve the health and safety of the employés, as ordered by the mine foreman and required by this act. If for any reason the superintendent cannot procure the necessary materials or supplies as aforesaid, he shall at once notify the mine foreman, whose duty it shall be to withdraw the men from the mine or portion of mine, until such materials or supplies are received. The superintendent shall, at least once every week, read, examine carefully, and countersign all reports entered in the mine record book by the mine 'foreman, and if he finds on such examination that the law is being violated in any particular, he shall order the mine foreman to stop said violation forthwith, and shall see that his order is complied with."

Section 2:

"The superintendent shall not obstruct the mine foreman or other officials in the fulfillment of any of their duties as required by this act, but he shall direct that the mine foreman and all the other employés under him comply with the law in all its provisions, especially when his attention is called by the inspector to any violation of the law. At any mine where a superintendent is not employed, the duties that are herein prescribed for the superintendent shall devolve upon the mine foreman, in addition to his regular duties."

Article 4, section 1, provides that:

"The mine foreman shall have full charge of all the inside workings and of the persons employed therein, in order that all the provisions of this act so far as they relate to his duties shall be complied with, and the regulations prescribed for each class of workmen under his charge carried out in the strictest manner possible."

The section also gives the mine foreman authority to appoint assistants when the workings are so extensive that he is unable personally to carry out the requirements of the act.

Article 4, section 6, provides that:

"The mine foreman shall direct and see that every working place is properly secured by props or timbers, and shall see that no person is directed or permitted to work in an unsafe place, unless it be for the purpose of making it safe. He shall also see that the workmen are provided with sufficient props, cap-pieces, and timbers of suitable size."

Section 7 provides:

."Every workman in need of props, cap-pieces, and timbers shall notify the mine foreman or the assistant mine foreman (or any other person delegated by the mine foreman) of the fact, at least one day in advance, giving the number, size, and length of props, cap-pieces, and timbers required. In case of emergency, the timber may be ordered immediately upon the discovery of danger. If for any reason the necessary timbers cannot be supplied when required, the mine foreman or assistant mine foreman shall instruct the workmen to vacate the place until the timber needed is supplied."

Section 9:

"The mine foreman shall direct and see that as the miners advance in their excavation all dangerous and doubtful pieces of coal, slate, and rock overhead are taken down or at once carefully secured against falling on the workmen. Any workman who neglects to carry out, or disobeys, the instructions of the mine foreman or his assistant in regard to securing his working place, shall be suspended or discharged by the mine foreman."

Section 10:

"The mine foreman shall give prompt attention to the removal of all dangers reported to him by his assistants, the fire boss, or by any other person working in the mine, and in case it is impracticable to remove the danger at once, he shall notify every person whose safety is menaced thereby to remain away from the portion where the dangerous conditions exist. * * * Instructions shall be given the men by the mine foreman, assistant mine foreman, or fire boss, or other authorized person, as to when, where, and how timber shall be placed so as to avoid accidents from falls, and also, in a general way, how to mine coal with safety to themselves and others."

Article 25.—Special Rules.

Duties of Miners.

"Rule 1. The miner shall examine his working place before beginning work, and take down all dangerous slate, or otherwise make it safe by properly timbering it, before commencing to mine or load coal. * * * Should he at any time find his place becoming dangerous from gas or roof or from any unusual condition that may arise, he shall at once cease working and inform the mine foreman or the assistant mine foreman of said danger, but before leaving his place he shall put some plain warning across the entrance thereto to warn others against entering into danger. * * * He shall order all props, cap-pieces, and all other timbers necessary, at least one day in advance of needing them, as provided for in the rules of the mine. If he fails to receive said timbers, and finds his place unsafe, he shall vacate it until the necessary timbers are supplied. * * * The miner shall remain during working hours in the working place assigned to him by the mine foreman or the assistant mine foreman, and he shall not leave his working place for another working place without the permission of the mine foreman, assistant mine foreman, or fire boss, and he shall not wander about the hauling roads or enter abandoned or idle workings."

General rules:

"Rule 7. All employés shall notify the mine foreman or the assistant mine foreman of the unsafe condition of any working place, * * * when said conditions are known to them."

Act June 9, 1911 (P. L. 756).

As this court is bound by the construction given to this act by the courts of Pennsylvania, we call attention to the decisions of the Supreme Court of that state for the purpose of showing that the mine foreman is the representative of the state and not of the mineowner, and that the latter, as already indicated, is not liable for injuries which result from the former's neglect of his statutory duties.

In Durkin v. Kingston Coal Company, 171 Pa. 193, 33 Atl. 237, 29 L. R. A. 808, 50 Am. St. Rep. 801 (1895) the court declared that:

"Under the operation of this statute the mine foreman represents the commonwealth."

And the court decided that the mineowner is not liable for an injury arising from the negligence of the foreman. The court said that a

mine foreman who neglected to perform his duty under the act is liable for injuries sustained by a miner resulting from his neglect.

In Golden v. Mt. Jessup Coal Company, Limited, 225 Pa. 164, 73 Atl. 1103 (1909), it was held that the foreman was the state's representative and that:

"An employer cannot be held liable for the mistakes or incompetency of the state's representative."

In Wolcutt v. Erie Coal & Coke Company, 226 Pa. 204, 75 Atl. 197 (1910), the court declared:

"We have uniformly held that a mine foreman is a fellow servant of the other employés engaged in the mine, and in none of our cases has it been suggested that he is a representative or agent of the owners. Being a fellow servant of the other laborers in the mine, the owner is not liable for injuries resulting to them by neglect of the foreman to perform his statutory duties. It may therefore be admitted that if Mitchell was a duly certified mine foreman, and was engaged only as such in this mine at the time the plaintiff was injured, and the plaintiff's injuries resulted from the foreman's negligence, the defendant company would not be liable."

It was declared that the duty of the mine foreman is to see that the interior of the mine is kept in a proper and safe condition, and that in that position he is supreme, and that the superintendent—

"who is the representative of the owner, cannot interfere with him in the discharge of his duties. While his powers are extensive and ample in regulating and controlling the internal operations of the mine so as to protect those employed therein, yet he is in no sense the agent or representative of the owner of the mine."

In Dempsey v. Buck Run Coal Company, 227 Pa. 571, 76 Atl. 745 (1910) it was held that a mineowner is not responsible for injuries to a workman due to negligence of the foreman in the discharge of his duties under the law.

In Reeder v. Lehigh Valley Coal Company, 231 Pa. 563, 575, 80 Atl. 1121, 1125 (1911) the court said:

"It has been held in a long line of cases that the mine owner is not liable for the negligent acts of a mine foreman committed in the discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision. From Lehigh Valley Coal Co. v. Jones, 86 Pa. 432, and Durkin v. Kingston Coal Co., 171 Pa. 193 [33 Atl. 237, 29 L. R. A. 808, 50 Am. St. Rep. 801], to Golden v. Mt. Jessup Coal Co., 225 Pa. 164 [73 Atl. 1103], this rule has remained unbroken. It may therefore be said to be settled law."

[3, 4] It is assigned as error in the case at bar that the court struck out certain testimony concerning a conversation alleged to have taken place two weeks before the accident between plaintiff's witness, John Zipay, and the assistant mine foreman and the assistant superintendent, in which Zipay asked these officials for crossbars. But the record shows that the court granted the motion "to strike out the portion of the testimony of Zipay, which says he asked Joe Willis (the assistant mine foreman) for crossbars." It nowhere appears that the court struck out that part of Zipay's testimony in which he declared that he made a like request of Browning, the assistant superintendent. Browning represented the defendant. Willis, the assistant mine foreman, did not. Proof as to notices other than such as were con-

nected in time and place should have gone out. We think the alleged request made by Zipay on the assistant mine foreman was remote, and properly stricken out. But if we are mistaken, and the testimony had not been stricken out, and had been accepted as true, notwithstanding the fact that the witness was contradicted by both the assistant mine foreman and the assistant superintendent, it could not have helped the plaintiff's case, under the decisions of the Supreme Court of Pennsylvania, construing the Mining Act. In Peters v. Vesta Coal Co., 243 Pa. 241, 90 Atl. 65 (1914), the plaintiff, as here, not only asked the mine foreman for timbers and did not get them, and then asked the superintendent, but in that case he went further, and told the superintendent that he "had asked everybody for longer posts, and they never sent me in any, and the place is too dangerous," and the superintendent replied: "Go in, I will send you now good ones." The Supreme Court of Pennsylvania said:

"After considering all the proofs, we are of opinion that the evidence relied upon is too vague, indefinite, and lacking in detail to justify a finding that the superintendent should have understood that the mine foreman was in default and that an emergency existed which required the immediate delivery of the posts."

In that case the accident did not occur on the same day that the request was made but on the day after. So in the case at bar the accident was on the next working day after the request.

[5] It is also alleged as error that the court struck out and excluded testimony on behalf of plaintiff concerning conversations between the deceased and Willis, the assistant mine foreman, in the presence of the witness Zipay, in which the deceased asked for crossbars and a buddy a week before the accident. We do not see, in the view we take of this case, how the striking out of this testimony has prejudiced the plaintiff's case. If this request for crossbars and a buddy was made, it evidently was not complied with, and plaintiff continued at work. Mining Act, rule 1, made it the duty of the deceased to quit the work. By not doing so he assumed the risk.

[6] It is further assigned as error that the court erred in permitting the defendant, over the objection and exception of the plaintiff, to read in evidence the deposition of one Joseph Hajduk taken by commission on behalf of the plaintiff. It appears that counsel for plaintiff examined a witness by commission months before trial, and did not call the witness at the trial, and that thereupon the counsel for defendant proposed to read the deposition. When this was proposed, it was admitted that the witness was present and available; but it was insisted that, as the plaintiff did not see fit to place him on the stand, defendant had a right to read the deposition. The deposition was taken pursuant to section 863 of the Revised Statutes of the United States (Comp. St. 1913, § 1472), which provides that the testimony of any witness may be taken in any civil cause by deposition de bene esse, when the witness lives at a greater distance than 100 miles from the place of trial, upon reasonable notice by the party or his attorney proposing to take such deposition. Section 865 of the Statutes (Comp. St. 1913, § 1474) also provides that:

"Unless it appears to the satisfaction of the court that the witness is then dead, or gone out of the United States, or to a greater distance than 100 miles from the place where the court is sitting, or that, by reason of age, sickness, bodily infirmity, or imprisonment, he is unable to travel and appear at court, such deposition shall not be used in the cause."

This provision is found in Judiciary Act Sept. 24, 1789, c. 20, § 30, 1 Stat. 90 and has been in force ever since. It is urged that this statutory limitation on the use of depositions is intended to protect the opposite party, and that the party who takes a deposition stands in no position to utilize a restriction which the opposite party does not insist ·upon. The .rule as laid down by Weeks in his Law of Depositions, § 466, is as follows:

"It is held by a large preponderance of authorities that, where one of the parties to a cause obtains a commission to examine witnesses, the other party has a right to call for the deposition and make use of it at the trial. And many cases hold that generally a deposition taken by one party may be used in evidence by the other, if the former fails or refuses to read it himself. And it is held that if one party takes a deposition, and declines to read it, the adverse party may read it, although the witness would have been incompetent, if offered · by him."

The author, however, makes no reference to the act of Congress, and it does not appear that he had it in mind in laying down the rule above quoted. Professor Wigmore, in his excellent work on Evidence (volume 2, § 1416, pp. 1786, 1787), in discussing the use of depositions, although making no reference in this connection to the act of Congress, states his opinion as follows:

"It [the deposition] is offered as the substantive testimony of that witness, whose testimony has not as yet been heard. There is, therefore, no reason why one party rather than the other should be allowed to' resort to a deposition without showing the deponent unavailable in person; and this the non-taker, as well as the taker, must do before using it."

And he cites in support of his view Gordon v. Little, 8 Serg. & R. (Pa.) 532, 548, 11 Am. Dec. 632 (1822); Sexton v. Brock, 15 Ark. 345, 349 (1854). Elliot v. Schultz, 10 Humph. (29 Tenn.) 234, 236 (1848), also supports the same doctrine.

In Whitford v. Clark County, 119 U. S. 522, 7 Sup. Ct. 306, 30 L. Ed. 500 (1886) the court held it error to read a deposition the witness being in the court at the time. But in that case the party who read the deposition was the party who took it.

In Yeaton v. Fry, 5 Cranch, 335, 3 L. Ed. 117 (1809) the court had before it a somewhat analogous question. The act of Congress requires that one proposing to take a deposition shall give notice ·to the opposite party. The deposition was taken by the defendant without notice to the plaintiff. At the trial the plaintiff used the deposition over the defendant's objection. Chief Justice Marshall, speaking for the court, said:

"The defendant is not at liberty to except to his own depositions, because he does not produce proof of his having given notice to the plaintiff."

In Smith v. State, 145 Wis. 612, 130 N. W. 461, a deposition taken on behalf of an accused person was placed on file in the court. It

was held that, whether offered by him or not, it might be used by his adversary at the trial. The court said that:

"If an accused person sees fit to cause a deposition to be taken in his behalf and made a part of the court files existing at the time of the trial, he thereby waives his constitutional right to meet the witness face to face, so far as otherwise his adversary would be precluded from using such deposition whether offered by him or not."

The case at bar is not analogous with that decided in Wisconsin. The constitutional provision which the Wisconsin court held an accused person could waive simply provided that such person "shall enjoy the right * * * to meet the witnesses face to face." But the act of Congress involved here does not simply give an adverse party the right to demand that a witness be placed on the stand, if within the court's jurisdiction and available. It positively prohibits the use of the deposition unless it appears to the court that the witness is dead, or gone out of the United States, or to a greater distance than 100 miles from the place where the court is sitting, etc. In the face of this positive prohibition, it is not within the power of the court to allow a deposition to be used which the act says shall not be used, and such power cannot be given by the consent of this defendant. The deposition clearly should not have been read.

[7-9] It does not, however, necessarily follow that because of this error the case must be reversed and a new trial ordered. There can be no reversal for errors committed against one who it is apparent is not entitled to succeed in his action in any event. It appears from the testimony of the plaintiff's witness Zipay that the latter and one Vasilovich, his buddy, had worked in the same heading, butt No. 8, in which the deceased came to his death; that they worked there for about 10 months, and stopped work there August 11th or 14th, about two weeks prior to the accident; that Zipay, because of the condition of the roof, asked for crossbars 12 feet long and 10 inches thick, so that they might be put on the props and hold up the roof; that he was not furnished with the crossbars he asked for, but with some others, which he tried to use, and could not, because they were too short. He was asked what he and his buddy did when they found they could not use the crossbars and that no others were furnished, and he answered, "Left and quit." This was in strict accord with what the Mining Act, rule 1, required of them. Then the deceased went to work in the heading which Zipay and his buddy had vacated, and on Saturday night, according to Zipay, asked for crossbars 12 feet long and 10 inches thick and a buddy, and was told, "All right." Zipay, when asked why the deceased needed the crossbars, answered: "Rotten roof." He was recalled in rebuttal and asked:

"Mr. Zipay, in your opinion as a practical miner in a mine, could a man working alone have taken down with safety to himself a piece of rock five or six inches thick, six to nine feet square?"

He answered:

"No, one man cannot; there must be a helper. I have worked in mines about five years."

The rock described was the one which fell and killed the deceased.

The assistant foreman, called by defendant, after stating that he visited the deceased in butt No. 8 on Saturday afternoon about 3 p. m. (the deceased was found dead on the following Monday), testified as follows:

"I will describe the condition of eighth butt heading on Saturday afternoon preceding the Monday of this accident. You want me to explain the place, etc. Well, I went in there at 3 o'clock, as nearly as I can remember, and looked around his place, and picked up a pick, as is our custom of doing, and sounded the roof, and found a piece of rock that did not sound very good; he had it in pretty fair shape; he had a prop right in the center of the road, and on both sides; and this prop in the center of the road, in order for him to extend his track, would have to be taken out; so I told him that he would either have to make that piece of rock safe or take it down, and he said that he would; he said that he would probably come in early Monday morning, and he would attend to it."

He also testified that the rock which he found down on Monday morning, and which it is admitted was the rock which killed deceased, was the rock which he on Saturday advised the deceased to remove or make safe. This testimony shows, without the aid of that contained in the improperly admitted deposition, that the deceased knew of the dangerous condition of the place in which he was at work, that it was unsafe on Saturday night, that no crossbars or buddy had been sent him between Saturday night and the time when he resumed his work without either, and yet he resumed his work and apparently undertook to take down the dangerous rock that caused his death. He was a man of mature age and of extended experience as a miner. He had knowledge and appreciation of his danger, and knew that under the Mining Act he was required to quit the work and vacate the place. There is but one conclusion to be drawn from this statement of facts, and that is that he assumed the risk. In this condition of the record, we are not justified in sending the case back for a new trial because of the error in the admission of the deposition.

[10] The conclusion we have reached makes it unnecessary to consider the fourth assignment of error, which is that the court erred in permitting the defendant, against the plaintiff's objection and exception, to read the deposition to the jury through two counsel for defendant, one standing at the bar reading the questions and the other sitting in the witness chair reading the answers. When it was proposed to do this, counsel for plaintiff objected, saying:

"I object to any dramatic exhibition of that character; this is a court of justice; it is not a playhouse, and it is imitating this man, who is an employé of the defendant."

The court overruled the objection, and declared no one was being imitated. We take occasion to say that, if the circumstances had justified the reading of the deposition, no exception could be taken to the manner in which it was read. It was a perfectly proper way in which to read it. Indeed, it is a much more satisfactory way than to have one person read the whole, because it enables the jury easily to differentiate between question and answer.

There is no evidence in the record that the defendant ever failed to comply with the orders of the mine foreman or of his assistants; and there is no evidence that the defendant ever had notice that an "emer-

gency of danger" had arisen which demanded immediate action by it as provided in the Mining Act of the state of Pennsylvania. The alleged conversation of Zipay with the assistant mine foreman under the Pennsylvania decisions is not notice to the defendant. Such evidence as there is to show notice is the testimony of the witness Zipay as to the alleged conversation of the deceased with the assistant superintendent, in which he simply asked for the crossbars and a buddy. That testimony is denied. But, assuming it to be true, the conversation as reported is insufficient under the Pennsylvania decisions, as we have seen, to inform the assistant superintendent that the mine foreman was in default and that an emergency existed which required immediate action.

Judgment affirmed.

COXE, Circuit Judge. I dissent upon the ground that it cannot be said, as matter of law, that the conceded error in admitting the Hajduk deposition was not prejudical to the plaintiff.

The negligence of Vagaszki and of the defendant are questions of fact and should be submitted to a jury upon competent evidence.

What effect the reading by the defendant of testimony taken on behalf of the plaintiff may have had upon the jury we do not know. That it influenced the jury unfavorably to the plaintiff may reasonably be inferred.

The plaintiff is entitled to a new trial.