## Employment of Mine Foremen

RIAL, Deputy Attorney General, January 17, 1940.— Your letter of November 22, 1939, raises a question as to the employment of mine foremen in bituminous coal mines. This may be stated as follows:

Where a number of co-owners or a partnership owns and operates a bituminous coal mine and five men or more are actually engaged in the mining of the coal, either as co-owners or co-owners and employes, does the Bituminous Coal Act of June 9, 1911, P. L. 756, in article IV, sec. 1, as amended by the Act of June 1, 1915, P. L. 716, sec. 2, and as amended by the Act of July 1, 1937, P. L. 2486, sec. 4, 52 PS §871, require the employment of a mine foreman?

Section 4 of the Act of 1937, supra, provides:

"In order to secure efficient management and proper ventilation of the mines, to promote the health and safety of the persons employed therein, and to protect and preserve the property connected therewith, *the operator or the superintendent shall employ a competent and practical mine foreman for every mine where five or more persons are employed, who shall be under the supervision and control of the operator or the superintendent. The mine foreman shall have full charge of all the inside workings and the persons employed therein, subject, however, to the supervision and control of the operator or the superintendent, in order that all the provisions of this act so far as they relate to his duties shall be complied with, and the regulations prescribed for each class of workmen under his charge carried out in the strictest manner possible.* If the mine is generating explosive gas, in quantities sufficient to be detected by an approved safety lamp, the mine foreman must possess a first grade mine foreman's certificate. If the mine is non-gaseous, the mine foreman must possess either a first grade mine foreman's certificate or a second grade mine foreman's certificate." (Italics supplied.)

The Bituminous Coal Act of 1911, supra, as amended, while not so described, is, nevertheless, a comprehensive

codification of the law relating to the mining of bituminous coal.

The answer to your question, as stated above, turns upon the interpretation to be given to the words "where five or more persons are employed" in the phrase "the operator or superintendent shall employ a competent and practical mine foreman for every mine *where five or more persons are employed*", contained in section 4 of the Act of 1937, supra. The question in its narrowest compass is, what does the word "employed" mean in the connection in which it is used.

Section 1 of the Act of 1937, supra, 52 PS §701, provides:

"That for the purposes of this act the terms and definitions contained therein shall be as follows:

"Mine.—In this act the term 'mine' includes the shafts, slopes, drifts, or incline planes connected with excavations penetrating coal stratum or strata, which excavations are ventilated by one general air current, or divisions thereof, and connected by one general system of mine railroads over which coal may be delivered to one or more points outside the mine, when such is operated by one operator.

"Excavations and Workings.—The term 'excavations and workings' includes all the excavated portions of a mine, those abandoned as well as the places actually being worked; also all underground workings and shafts, tunnels, and other ways and openings, and all such shafts, slopes, tunnels, and other openings in the course of being sunk or driven, together with all roads, appliances, machinery, and material connected with the same below the surface. . . .

"Operator.—The term 'operator' means any firm, corporation or individual operating any coal-mine, or any part thereof.

"Superintendent.—The term 'superintendent' means the person who shall have, on behalf of the operator, immediate supervision of one or more mines.

"Mine Foreman.—*The term 'mine foreman' means the person whom the operator or superintendent shall place in charge of the inside workings of the mine and of the persons employed therein.*" (Italics supplied.)

It must constantly be borne in mind that legislation relating to coal mining has continually been aimed primarily at protection of the miner, for it is generally conceded that a coal miner is engaged in a very hazardous occupation.

Historically, legislative protection of miners had its origin in the Act of April 18, 1877, P. L. 56, the title to which recites that it is "An act providing the means for securing the health and safety of persons employed in the bituminous coal mines of Pennsylvania"; and the Act of June 30, 1885, P. L. 205, the title to which recites that it is "An act relating to bituminous coal mines and providing for the lives, health, safety and welfare of persons employed therein." Provisions were there made for a "mining boss", described in later legislation as a mine foreman. These acts were superseded and supplied by the Act of May 15, 1893, P. L. 52, and this latter act by the Act of 1911, supra.

Under the above-mentioned Acts of 1911 and 1937, and all the former acts for that matter, the duties of a mine foreman were chiefly directed to the protection of the miner against the hazards of his occupation. The later legislation amplified and increased his duties and also provided for the protection of the mine property, as that particular mine where he was employed might affect, or be affected by, adjoining mines in the same stratum but separated by barrier pillars.

In addition to the mine foreman's general duties recited in section 4 of the Act of 1937, supra, there are other duties imposed upon him. Thus he is required to see that the working places are properly secured by props or timbers; that no one be permitted to work in an unsafe place; that the proper timbers are delivered to the working places of the miners; that shelter holes shall be

cut and maintained in the stratum along haulage roads; that the coal be properly mined before it is blasted; that protection be afforded against explosive gas, which may be generated in the mine; that provision be made for rock dusting; that as the miners advance in their excavation dangerous pieces of coal, slate, and rock be taken down; that prompt attention be given to the removal of all dangers reported to him; that he daily visit, either personally or by his assistant, all working places; that he pass upon the ability of the miner safely to work in a mine, for the protection of co-employes; that he instruct inexperienced miners how safely and properly to perform their work; that he employ shot firers in gaseous mines; that he perform important duties where the mine is in proximity to any abandoned mine suspected of generating gas, or where there may be accumulation of water; that he report accidents daily and that he see that approved safety lamps are used.

These statements of his duties are illustrative of, but not inclusive of, the obligations resting upon mine foremen looking to safety. Under former legislation, that is, prior to 1911, and the court interpretations thereof, the whole burden of protection of the men employed in mines and the safety of an operation fell upon him. There does not seem to be any change in that respect in the Acts of 1911 and 1937, supra, for in section 1 of the Act of 1937, supra, it is said: "The term 'mine foreman' means the person whom the operator or superintendent shall place in charge of the inside workings of the mine and of the persons employed therein." So important are his duties that, for violation of the obligations imposed upon him by the statutes, he may be held criminally responsible.

The decisions of the Supreme Court of this Commonwealth in actions of trespass against the mine owner, arising out of negligence in the performance of a mine foreman's statutory duties under the earlier legislation, hold that the *mine foreman is the representative of the*

*State and not of the mine owner, even though employed by the operator.*

In Durkin v. The Kingston Coal Co. et al., 171 Pa. 193, 201, the court declared that:

"Under the operation of this statute [an earlier act than in the instant case] the mine foreman represents the commonwealth."

In Golden v. Mt. Jessup Coal Co., Ltd., 225 Pa. 164, it was held that the foreman was the State's representative and that "an employer cannot be held liable for the mistakes or incompetency of the state's representative."

In Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204, 209, the court declared:

"We have uniformly held that a mine foreman is a fellow servant of the other employees engaged in the mine, and in none of our cases has it been suggested that he is a representative or agent of the owners."

It was declared in that case that the duty of the mine foreman is to see that the interior of the mine is kept in a proper and safe condition, and that in that position he . is supreme, and that the superintendent (p. 209), "who is the representative of the owner, cannot interfere with him in the discharge of his duties. While his powers are extensive and ample in regulating and controlling the internal operations of the mine so as to protect those employed therein, yet he is in no sense the agent or representative of the owner of the mine."

See also Dempsey v. Buck Run Coal Co., 227 Pa. 571, and Reeder v. Lehigh Valley Coal Co., 231 Pa. 563, 575. See also Vagaszki v. Consolidation Coal Co., Inc., 225 Fed. 913 (1915).

This rule was qualified, however, to this extent, that if any matter injuriously affecting the health or safety of miners is brought to the attention of the owner, it is his duty to correct it, and if on the faith of a promise so to do the miner goes to work and is injured, he can recover against the owner: Collins v. Northern Anthracite Coal

Co., 241 Pa. 55 (1913). There are other exceptional instances but they need not be here considered.

While actions in trespass for negligence in cases of mine accidents have largely disappeared since the passage of The Workmen's Compensation Act of June 2, 1915, P. L. 736, the construction adopted by the Supreme Court that the mine foreman is the State's representative in mining operations still seems to be the law.

The Century Dictionary variously defines the verb *employ*: "To give occupation to; make use of the time, attention, or labor of; keep busy or at work; use as an agent." "To make use of as an instrument or means; apply to any purpose: as, to *employ* medicines in curing diseases." Also: "To occupy; use; apply or devote to an object; pass in occupation: as, to *employ* an hour, a day, or a week; to *employ* one's life." It is distinguished from "hire": "A man *hired* to labor is *employed*, but a man may be *employed* in a work who is not *hired*." As a noun this same authority defines it as "Occupation; employment."

"To be 'employed' in any thing, means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it": The United States v. Morris, 39 U. S. 464, 475, 10 L. Ed. 543 (1840); Ritchie v. The People, etc., 155 Ill. 98, 40 N. E. 454, 455 (1895). To employ was held to mean " 'to have in service, to cause to be engaged in doing something' ": Buffalo Steel Co. v. Aetna Life Ins. Co. (Erie County 1912), 136 N. Y. Supp. 977, 982.

In an action on a policy of insurance covering liability for injuries caused by drivers or by one hired as a substitute driver, issued to a partnership, where a partner became the substitute driver of a truck when the driver became ill, and an accident occurred, the insurer contended that the word "employ" meant "hired substitute". The District Court of Appeals of California (rehearing denied by the Supreme Court) in Antichi et al. v. New York Indemnity Co., 126 Cal. App. 284, 14 P. (2d) 598 (1932),

denied such contention, in affirming a judgment against the insurance company. The court said (p. 288) :

"In the instant case Antichi was not employed by the partnership of which he was a member to drive the said truck, but merely took over its operation owing to the illness of Harden.

"The word 'employ' is used in divers significations. Although it usually imports the relation of master and servant, or of employer and employee, this is not the universal rule, and the idea of compensation is not necessarily involved in the term. In the present tense it is applied to persons engaged in doing something. In the past tense it is applied to persons engaged in the performance of work or duties, either busy or occupied at work. (20 Cor. Jur. 1228, 1229.) To engage is one of the meanings of employ. (Black's Law Dictionary, 430.)

"The word 'employed' may mean either busy or occupied at work or may mean entrusted with the management of affairs."

In 20 C. J. 1238, the word "employ" is defined:

"In General. The word is used in divers significations. Although it usually imports the relation of master and servant, or of employer and employee, this is not the universal rule. . . . When used passively, it sometimes has a reflexive meaning, signifying only to be engaged in; to occupy the time, attention, and labor of", citing Weaver v. Ann Arbor R. R. Co., 139 Mich. 590, 596, 102 N. W. 1037 (1905).

In view of the manifold definitions of the word "employ" as above indicated, the difficulty in this case arises out of the application of the word to the concrete case: How is the word "employed" to be understood in the legislative phrase under consideration?

A wise jurist once said that "words, like people, are to be known by the company they keep." Thus it is said in 59 C. J. §577, p. 978:

"The words [of a statute] are to be interpreted with due regard to the subject matter of the statute and its

purpose, and it may be necessary, in order to give effect to the legislative intent, to extend or restrict the ordinary and usual meaning of words; but the words of a statute are not to be given a forced, strained, or subtle meaning. The meaning of doubtful words must be determined by the sense in which they were used by the legislature without regard to their primary meaning. The same words may not always have the same effect, and their usual meaning may be disregarded when it is evident that they were incorrectly used, or used in another sense. So also uncertain or ambiguous words will be construed so as, if possible, to produce a reasonable result in harmony with the purpose of the act."

When the Act of 1937, supra, says that a mine foreman shall be employed for "every mine *where five or more persons are employed*," does the word "employed" mean that these five or more persons are "employed" in the master-and-servant relation, or does the word "employed" mean "engaged" in doing something, or "engaged" in the performance of work or duties, in the sense of busy or occupied at work, engaged in mining coal, regardless of the master-and-servant relation?

If section 4 of the Act of 1937, supra, requires that "In order to secure efficient management and proper ventilation of the mines, to promote the health and safety of the persons employed therein, and to protect and preserve the property connected therewith, the operator or the superintendent shall employ a competent and practical mine foreman for every mine where five or more persons are employed," the question fairly arises, who is the directing head in the day-to-day operations, if a large number of men, in excess of five, are actually engaged in an extensive mine operation, albeit co-owners or members of a partnership, where danger is always imminent?

The Statutory Construction Act of May 28, 1937, P. L. 1019, provides, in art. IV, sec. 51, 46 PS §551, as follows:

"Construction of Laws; Legislative Intent Controls.— The object of all interpretation and construction of laws

is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Measured by these standards, if we interpret the word "employed", as used in the act of assembly in question, to signify the master - and - servant relationship, then we adopt a meaning which sets at naught the obvious and expressed purposes and the legislative intent of the various related acts, beginning in 1877.

Such an interpretation should not be accepted unless it is imperatively demanded by the statute. Here, however, we have an alternative definition of the word "employed" as meaning "those engaged" in the mining of the coal, regardless of the relationship which they bear either as owners or employes, and which harmonizes with the spirit and purposes of the legislation. Therefore, the latter interpretation should be adopted.

We are of opinion, and you are accordingly advised, that where a number of co-owners or a partnership owns and operates a bituminous coal mine and "five or more persons are employed" therein, that means "five or more persons actually engaged" therein, whether co-owners or co-owners and employes, and in such cases the Bituminous Coal Act of June 9, 1911, P. L. 756, as amended by

the Act of June 1, 1915, P. L. 716, and as amended by the Act of July 1, 1937, P. L. 2486, 52 PS §871, requires the employment of a competent and practical mine foreman.